JAMES TAYLOR, Petitioner-Appellant, v. MICHAEL P. LANE, Director, Department of Corrections, Respondents-Appellees.

Third District No. 3—89—0304

Opinion filed November 15, 1989.

James Taylor, of Joliet, appellant *pro se.*

Neil F. Hartigan, Attorney General, of Springfield (Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

The *pro se* petitioner, James Taylor, appeals from the trial court's order dismissing his petition for a writ of *habeas corpus.* We affirm.

The record reveals that in October of 1976, the petitioner was sentenced to an indeterminate term of not less than 100 years nor more than 200 years in prison for the murder of an Illinois State police officer. In January of 1979, he was also sentenced to a concurrent term of not less than six years nor more than 20 years for kidnapping in connection with that murder.

On August 8, 1984, the petitioner first appeared before a three-member panel of the Prisoner Review Board (Board), which continued his parole determination to an *en banc* hearing before the Board. At the *en banc* hearing, the petitioner's request for parole was denied. Thereafter, on a yearly basis the petitioner's requests for parole were denied after *en banc* hearings by the Board. After denying the petitioner's request at an August 1988 hearing, the Board continued the case until August of 1991, finding that the petitioner would not be granted parole if provided a hearing earlier than that date.

The petitioner subsequently filed a *habeas corpus* petition, alleging that changes in Illinois statutes regarding the awarding of good

conduct credit, the provision for *en banc* parole hearings, and the allowance for three-year parole hearing continuances violated the *ex post facto* prohibitions of the United States and Illinois Constitutions (U.S. Const., art. I, §9; Ill. Const. 1970, art. I, §16). The respondents, Michael P. Lane, Director of the Illinois Department of Corrections (Department), and Paul J. Klincar, Chairman of the Illinois Prisoner Review Board, moved to dismiss the petition, contending that it failed to state a claim upon which relief could be granted. The trial court granted the respondents' motion, finding that the changes in the law were procedural in nature and therefore did not violate the *ex post facto* prohibition.

 Initially, we note that the respondents have raised the argument that a writ of *habeas corpus* is not the proper remedy here. A writ of *habeas corpus* is available only to obtain the release of a prisoner who has been incarcerated under a judgment of a court which lacked jurisdiction over the subject matter or the person, or where there has been some act, omission, or event which entitles the prisoner to release. (Ill. Rev. Stat. 1987, ch. 110, par. 10—101 *et seq.*; *Newsome v. Hughes* (1985), 131 Ill. App. 3d 872, 476 N.E.2d 478.) The respondents argue that the petitioner's petition was properly dismissed because it did not allege any question pertaining to jurisdiction or any post-conviction event which would entitle him to release. We find the resolution of this argument inconsequential, since, in any event, section 10—121 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 10—121) provides for liberal amendment of pleadings in these cases.

 Turning to the merits of this appeal, we note that two critical elements must be present for a criminal or penal law to be *ex post facto*: (1) it must be retrospective, *i.e.*, it must apply to events occurring before its enactment; and (2) it must disadvantage the defendant affected by it. (*Weaver v. Graham* (1981), 450 U.S. 24, 67 L. Ed. 2d 17, 101 S. Ct. 960.) Further, even though the law may work to the disadvantage of a defendant, a procedural change is not *ex post facto*. *Dobbert v. Florida* (1977), 432 U.S. 282, 53 L. Ed. 2d 344, 97 S. Ct. 2290.

The instant petitioner initially argues that sections 3—6—3(a) and 3—12—5 of the Uniform Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, pars. 1003—6—3(a), 1003—12—5), as amended in 1978, increase the length of his sentence and therefore violate the *ex post facto* prohibition. Prior to February 1, 1978, an inmate was eligible to receive statutory good-time credit at a progressive rate during his first six years of incarceration, until he reached an annual maximum

of six months of good-time credit in the sixth year of his prison term. During the sixth year and each subsequent year of imprisonment, an inmate was eligible for a maximum of six months' statutory good-time credit annually. (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—3.) Further, prisoners who performed work assignments or participated in other Department programs were eligible for compensatory good-time credits. Ill. Rev. Stat. 1977, ch. 38, par. 1003—12—5.

Effective February 1, 1978, however, the Illinois General Assembly amended sections 3—6—3 and 3—12—5 of the Code, thereby abolishing this statutory and compensatory credit system. Under amended section 3—6—3(a)(2), good-time credit is given on a day-for-day basis. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—6—3(a)(2).) Therefore, for every day served in prison, the prisoner now receives one day of good-time credit. Further, section 3—6—3(a)(3) provides that the Director of the Department may award up to 90 days' additional good conduct credit. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—6—3(a)(3).) However, good conduct credit can no longer be given as compensation for performing a work assignment. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—12—5.) Accordingly, the pre-1978 scheme was more beneficial for some prisoners.

In interpreting these amendments, the Illinois Supreme Court held in *Johnson v. Franzen* (1979), 77 Ill. 2d 513, 397 N.E.2d 825, that for prisoners sentenced after February 1, 1978, the current day-for-day system is to be used in computing their good-time credits. However, with regard to any prisoner sentenced prior to the effective date of the day-for-day system, the more beneficial of the two good conduct systems should be applied to the post-February 1, 1978, period of incarceration. (*Williams v. Irving* (1981), 98 Ill. App. 3d 323, 424 N.E.2d 381.) Further, in *Lane v. Sklodowski* (1983), 97 Ill. 2d 311, 454 N.E.2d 322, the Illinois Supreme Court held that the director may grant no more than a total of 90 days' credit for meritorious service to each prisoner.

■ The instant petitioner was sentenced in 1976. We find, however, that he has failed to allege in what way he was disadvantaged by these statutory changes. In his petition, he merely claims that as a result of these changes he is serving a longer sentence. There is no indication in the record that the Department is applying a formula resulting in a longer period of incarceration for him. Accordingly, we find no merit to the petitioner's contention. See *Outlaw v. O'Leary* (1987), 161 Ill. App. 3d 218, 514 N.E.2d 208.

The petitioner next challenges the constitutionality of amended sections 3—3—2 and 3—3—5 of the Code (Ill. Rev. Stat. 1987, ch. 38,

pars. 1003—3—2, 1003—3—5), regarding *en banc* parole hearings. When the petitioner was sentenced in 1976, the Parole and Pardon Board (now known as the Prisoner Review Board) consisted of 10 persons and had the authority to meet and make decisions with panels of three or more members. The action of a majority of the panel constituted the action of the Board. Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—5(a).

Section 3—3—2(a)(2) was amended to provide in relevant part that "the decision to parole and the conditions of parole for all prisoners who were sentenced for murder or who received a minimum sentence of 20 years or more under the law in effect prior to February 1, 1978 shall be determined by a majority vote of the Prisoner Review Board." (Ill. Rev. Stat. 1985, ch. 38, par. 1003—3—2(a)(2).) The Code was again amended effective January 1, 1987, increasing the size of the Board from 10 members to 12 members. Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—1(b).

■ Therefore, whereas parole decisions could have been made by a majority vote of a three-member panel of the Board prior to these amendments, the determinations must now be made by a majority vote of the entire Board for those prisoners sentenced to murder or who received a minimum sentence of 20 years or more under the law in effect before February 1, 1978. The petitioner argues that these amendments violate the *ex post facto* prohibition because they decrease his chances for parole.

In *Graham v. Klincar* (1987), 163 Ill. App. 3d 1091, 517 N.E.2d 606, we held that this *en banc* hearing requirement is not disadvantageous to prisoners sentenced prior to its enactment. Further, we note that the increase in the number of Board members may actually increase the petitioner's chances of parole. (*Davis-El v. O'Leary* (N.D. Ill. 1986), 626 F. Supp. 1037.) Therefore, in accordance with our decision in *Graham*, we find that these amendments were not disadvantageous to the instant petitioner.

■ Lastly, the petitioner argues that section 3—3—5(f) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—5(f)), which provides for a three-year continuance for parole hearings, violates the *ex post facto* prohibition. In support of his argument, the petitioner notes that at the time he was sentenced, the law required that prisoners receive annual parole hearings (Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—5(f)).

The respondents note, however, that the law was amended effective January 1, 1988, to allow the Board to grant three-year continuances for prisoners sentenced between January 1, 1973, and September 30, 1977, if the Board determines that it is not reasonable to

believe that parole will be granted at a hearing prior to the scheduled rehearing date. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—5(f).) The respondents argue that the amendment was a procedural change that did not violate the *ex post facto* prohibition. We agree.

As noted, the statute allows for three-year continuances only if the Board finds that it is not reasonable to believe that parole may be granted at an earlier date. Consequently, the statute insures that the petitioner will not be incarcerated for a longer period than he would be if he received annual parole hearings. Section 3—3—5(f) therefore is not an *ex post facto* law, since it does not disadvantage prisoners. Further, the instant petitioner has failed to show that the Board's determination that he will not be granted parole prior to his scheduled rehearing is unreasonable.

Based upon the above findings, we conclude that the trial court properly dismissed the petitioner's petition for a writ of *habeas corpus*, because it did not state a cause of action for which relief could be granted.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.