(No. 68877.—

JOHN LEE TILLER, Appellee, v. PAUL KLINCAR *et al.*, Appellants.

*Opinion filed September 19, 1990.*

WARD, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield

(Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Nathan P. Maddox, Assistant Attorneys General, of counsel), for appellants.

John Lee Tiller, of Vienna, appellee *pro se.*

JUSTICE MILLER delivered the opinion of the court:

Paul Klincar, Delancey Moore, and Joseph Longo, members of the Illinois Prisoner Review Board (the Board), appeal from a judgment of the circuit court of Johnson County granting a writ of *mandamus* to plaintiff, John Lee Tiller, an inmate of the Illinois Department of Corrections. The circuit court ruled that a statutory amendment allowing the Board to schedule parole hearings at longer intervals than were allowed at the time of plaintiff's offense was unconstitutional as applied to plaintiff, and the court ordered the Board to grant plaintiff parole hearings pursuant to the former provision. The court also found that the reasons given plaintiff for denial of his parole application were insufficient as a matter of law and ordered defendants to grant plaintiff a new parole hearing within 60 days. Because application of the statute to plaintiff was found to be unconstitutional, the present appeal lies directly to this court (107 Ill. 2d R. 302(a)).

Plaintiff, John Lee Tiller, was convicted of murder, the offense having occurred May 25, 1975, and was sentenced to an indeterminate term of 100 to 200 years' imprisonment. Once plaintiff became eligible for parole, he received, from 1984 through 1988, annual parole hearings. On each occasion, the Board denied parole. On denying plaintiff's parole application in 1988, the Board scheduled plaintiff's next parole hearing for October 1991, based on the Board's finding that it was not reasonable to expect that plaintiff would be granted parole at an earlier date. In setting that date, the Board relied

on a recent amendment to section 3—3—5 of the Unified Code of Corrections concerning the scheduling of parole hearings (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1003—3—5).

Plaintiff subsequently filed a complaint for a writ of *mandamus*, alleging that defendants violated his constitutional rights by scheduling his next parole hearing for a date three years after the date of his most recent hearing. According to plaintiff, section 3—3—5(f) of the Code, as amended to permit the Board to set parole hearings more than one year apart, is an *ex post facto* law as applied to him. Plaintiff further alleged that the Board members violated his due process rights by failing to provide him with sufficient reasons for the denial of his parole. Plaintiff also alleged a third ground for relief, which is not involved here.

The circuit court denied defendants' motion to dismiss plaintiff's complaint. Plaintiff then filed a motion for judgment on the pleadings, and the court ruled that plaintiff was entitled to partial judgment in his favor. With respect to the first allegation in plaintiff's complaint, the court found that the retroactive application of section 3—3—5(f) of the Code to plaintiff violates the constitutional prohibition against *ex post facto* laws. The court therefore ordered defendants to grant plaintiff annual parole hearings. Regarding plaintiff's second allegation, the court found that the reasons given plaintiff for denial of his parole were insufficient as a matter of law and ordered defendants to grant plaintiff a new parole hearing within 60 days of the court's order. Defendants appealed the judgment of the circuit court directly to this court, and their motion for a stay of judgment pending the outcome of this appeal was granted by the circuit court. The circuit court denied plaintiff relief on a third ground raised in the action, but that ruling is not at issue in the present appeal.

Defendants argue here that the circuit court erred in declaring section 3—3—5(f) of the Code unconstitutional as applied to plaintiff. Defendants further maintain that the circuit court erred in finding that plaintiff's due process rights were violated. We shall consider the claims in that order.

### *Ex Post Facto* Claim

Section 3—3—5 of the Code establishes procedures for hearing and evaluating parole applications. (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1003—3—5.) Paragraph (f) of that section governs the frequency with which parole hearings must be granted. (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1003—3—5(f).) At the time of plaintiff's commission of his offense in 1975, section 3—3—5(f) of the Code provided, in pertinent part:

"In its decision, the Board shall set the person's time for release, or if it denies parole it shall provide for a rehearing not more than 12 months from the date of denial." Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—5(f).

Thus, when plaintiff committed his offense, he was entitled to annual parole hearings once he became eligible for parole (see Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—3). Section 3—3—5(f) was later amended several times and, effective January 1, 1988, assumed its current form. The statute now provides, in pertinent part:

"In its decision, the Board shall set the person's time for parole, or if it denies parole it shall provide for a rehearing not less frequently than once every 3 years. The Board may, after denying parole to a person originally sentenced or who became eligible for parole between January 1, 1973 and September 30, 1977, schedule a rehearing no later than 3 years from the date of the parole denial, if the Board finds that it is not reasonable to expect that parole would be granted at a hearing prior to the

scheduled rehearing date." (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1003—3—5(f).)

Thus, section 3—3—5(f) of the Code in its current form permits the Board to schedule plaintiff's parole hearings at intervals of more than one year, provided the Board finds that it is not reasonable to expect that plaintiff would be granted parole before the next scheduled hearing date.

Defendants argue that the circuit court erred in finding that application to plaintiff of the current version of section 3—3—5(f) violates the constitutional prohibitions against *ex post facto* laws. (U.S. Const., art. I, §10; Ill. Const. 1970, art. I, §16.) Defendants contend that although the section applies retrospectively, it does not materially disadvantage plaintiff and, therefore, does not constitute *ex post facto* punishment. The defendants point to several provisions that, they believe, sufficiently ameliorate the statute's effects. Plaintiff argues that the elimination of his annual parole hearings disadvantages him because it impairs his ability to earn release on parole before the expiration of his sentence. According to plaintiff, this disadvantage is not removed by operation of the additional provisions cited by defendants.

Both the Federal and State Constitutions forbid the enactment of *ex post facto* laws. (U.S. Const., art. I, §10; Ill. Const. 1970, art. I, §16.) An *ex post facto* law is one that " 'imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " (*Weaver v. Graham* (1981), 450 U.S. 24, 28, 67 L. Ed. 2d 17, 22, 101 S. Ct. 960, 964.) Two elements must be present for a criminal law to be *ex post facto*: first, the law "must be retrospective, that is, it must apply to events occurring before its enactment," and second, "it must disadvantage the offender affected by it." (*Weaver*, 450 U.S. at 29, 67 L. Ed. 2d at 23, 101 S. Ct. at 964; *Lindsey v.*

*Washington* (1937), 301 U.S. 397, 401, 81 L. Ed. 1182, 1186, 57 S. Ct. 797, 799.) A law need not impair a vested right to violate the *ex post facto* prohibition. (*Weaver*, 450 U.S. at 29, 67 L. Ed. 2d at 23, 101 S. Ct. at 964.) Even if a statute alters criminal provisions accorded solely by the grace of the legislature, it violates the clause "if it is both retrospective and more onerous than the law in effect on the date of the offense." *Weaver*, 450 U.S. at 30-31, 67 L. Ed. 2d at 24, 101 S. Ct. at 965.

Defendants acknowledge that the legislature intended for the current version of section 3—3—5(f) to apply retroactively to inmates such as plaintiff. The issues before us are whether plaintiff suffers a disadvantage when the Board schedules his next parole hearing at an interval greater than one year pursuant to the current version of section 3—3—5(f), and, if so, whether the disadvantage is sufficiently ameliorated by operation of the additional provisions relied on by defendants.

A similar question was considered by the appellate court in *Lett v. Klincar* (1986), 151 Ill. App. 3d 783. The plaintiff in *Lett* challenged an earlier version of section 3—3—5(f) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 1003—3—5(f)), claiming that its application to him violated the *ex post facto* clauses of the Federal and State Constitutions. The plaintiff in *Lett*, like plaintiff in the case before us, was originally entitled to annual parole hearings. Lett was denied parole in 1984, and the Board, pursuant to the version of section 3—3—5(f) of the Code then in effect, scheduled his next hearing three years from the date of its denial of parole. At that time section 3—3—5(f) of the Code provided, in pertinent part:

"In its decision, the Board shall set the person's time for parole, or if it denies parole it shall provide for a rehear-

ing not less frequently than once every 3 years." (Ill. Rev. Stat. 1983, ch. 38, par. 1003—3—5(f).)

Citing *Rodriguez v. United States Parole Comm'n* (7th Cir. 1979), 594 F.2d 170, the appellate court concluded in *Lett* that the version of 3—3—5(f) of the Code in effect in 1983 was an *ex post facto* law as applied to Lett because it diminished his opportunity for an early release.

The Board would distinguish *Lett* on two grounds. First, the Board points to the requirement of the current statute that the Board find, in scheduling the inmate's next parole hearing, that there is no likelihood of earlier release. A recent case, *Taylor v. Lane* (1989), 191 Ill. App. 3d 101, relied on that provision in rejecting an *ex post facto* challenge to the application of the current form of section 3—3—5(f) to an inmate who, like the plaintiff in the present case, had originally been entitled to at least annual parole hearings. The Board also cites a regulation that permits earlier consideration of a request for parole, upon presentation of special facts or circumstances that would warrant earlier review. We do not agree that either provision sustains the Board's application of the statute to plaintiff.

*Taylor* ruled that the current version of the statute, in requiring the Board to make the special finding that "it is not reasonable to expect that parole would be granted at a hearing prior to the scheduled rehearing date," would not operate to the disadvantage of an inmate who was formerly entitled to at least annual parole hearings. Explaining its decision, the *Taylor* court stated:

> "As noted, the statute allows for three-year continuances only if the Board finds that it is not reasonable to believe that parole may be granted at an earlier date. Consequently, the statute insures that the petitioner will not be incarcerated for a longer period than he would be

if he received annual parole hearings." (191 Ill. App. 3d at 106.)

Thus, the court ruled that application of the current version of section 3—3—5 to inmates formerly allowed earlier hearings did not violate the *ex post facto* prohibition.

In further support of their application of the current version of section 3—3—5 to plaintiff, defendants point to a Board regulation that establishes an interim hearing procedure. Defendants note that under section 1610.100 of the Board's rules, an inmate may request an interim hearing based on new facts or extraordinary circumstances that could not have been known to the inmate at the time of the previous hearing or that have arisen subsequent to the time of the previous hearing. The regulation in question provides:

> "After a parole is denied, a rehearing may be requested by the person who was denied parole or another in his behalf. Such request must be made in writing and must set forth new facts or extraordinary circumstances which could not have been known to the parole applicant at the time of his interview by the Board member, or new facts or extraordinary circumstances which have arisen subsequent to the time of the interview, or both, which have not been previously considered." 20 Ill. Adm. Code §1610.100(a)(2) (1985).

We do not believe that the special finding required by the statute or the interim review procedure provided by the regulation are sufficient to sustain application of the statute to plaintiff. The special finding now required by section 3—3—5(f), relied on by *Taylor*, merely makes explicit what the Board would have implicitly considered in setting the next parole hearing under the statute construed in *Lett*. Plaintiff was formerly entitled by statute to at least annual consideration of his request for parole. Permitting the Board to deny a new hearing for a period

longer than was formerly authorized clearly denies plaintiff that statutory right.

As is evident, the regulation does not permit an inmate to obtain an interim hearing based on information that could have been known to him at the time of the last parole hearing. Previously, plaintiff could have submitted to the Board each year any relevant information, including information that could have been known to plaintiff, but that he did not present, at his previous parole hearing. The current version of section 3—3—5(f), therefore, delays plaintiff's ability to present to the Board information that, if known to the Board, might cause the Board to grant plaintiff's parole application.

Whether an inmate is disadvantaged by the retroactive application of a new or amended statute depends on whether the new provision " 'makes more burdensome the punishment for [the] crime, after its commission.' " (*Dobbert v. Florida* (1977), 432 U.S. 282, 292, 53 L. Ed. 2d 344, 356, 97 S. Ct. 2290, 2297-98, quoting *Beazell v. Ohio* (1925), 269 U.S. 167, 169-70, 70 L. Ed. 216, 217-18, 46 S. Ct. 68, 70.) The possibility of parole is an element of the punishment annexed to any crime. (*Warden, Lewisburg Penitentiary v. Marrero* (1974), 417 U.S. 653, 662-64, 41 L. Ed. 2d 383, 391-92, 94 S. Ct. 2532, 2537-38; *Rodriguez v. United States Parole Comm'n* (7th Cir. 1979), 594 F.2d 170.) If that opportunity is curtailed through a reduction in the frequency of parole hearings or in their complete elimination, then the inmate has suffered a disadvantage for *ex post facto* purposes. (See *Rodriguez*, 594 F.2d at 175-76; *Lett*, 151 Ill. App. 3d at 786.) As noted by the court in *Rodriguez*, "only an unusual prisoner could be expected to think that he is not suffering a penalty when even though he is eligible for parole and might be released if granted a hearing, he is denied that hearing." (*Rodriguez*, 594 F.2d at 176.) The application of a new parole provision to an inmate con-

stitutes *ex post facto* punishment, then, if the new law "constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." *Weaver*, 450 U.S. at 35-36, 67 L. Ed. 2d at 27, 101 S. Ct. at 967.

Under the version of section 3—3—5(f) in effect at the time plaintiff committed his offense, plaintiff had at least a yearly opportunity to present to the Board any information relevant to the release decision. Scheduling the next hearing beyond the time previously required by law necessarily delays, however, the inmate's opportunity to present to the Board his request for release on parole. Thus, when the Board schedules an inmate's next parole hearing at a three-year interval pursuant to the current version of section 3—3—5(f), the inmate's opportunity to present favorable information to the Board is delayed. If the Board's consideration of favorable information is delayed, plaintiff's release on parole may be delayed, a decision that under the former statute the Board had to make at least annually.

We conclude that the elimination of plaintiff's right to annual, if not earlier, parole hearings under the current version of section 3—3—5(f) results in a disadvantage to plaintiff. Moreover, we do not agree with defendants that the requirement that the Board make a special finding concerning the inmate's prospects for parole and the existence of the regulation permitting an earlier hearing prevent the statute from being *ex post facto* with respect to plaintiff.

Because section 3—3—5(f) "constricts [plaintiff's] opportunity to earn early release" (*Weaver*, 450 U.S. at 35-36, 67 L. Ed. 2d at 27, 101 S. Ct. at 967), we find that the statute disadvantages plaintiff. We therefore conclude that section 3—3—5(f) of the Code, in its current form, is an *ex post facto* law as applied to plaintiff.

## Due Process Claim

Plaintiff also sought a new hearing on the ground that the reasons stated in the Board's denial of his most recent parole application were insufficient. The circuit court agreed and ordered the Board to conduct a new hearing within 60 days. The circuit court stayed its order pending appeal to this court.

When the Board denied plaintiff's parole application in 1988, it provided plaintiff with the following explanation for its decision:

"We the members of the Prisoner Review Board have carefully reviewed all aspects of your case for possible parole consideration. The record reflects that you are serving a sentence of 100 to 200 years for the offense of murder. The shooting death of an East St. Louis police officer.

Your institutional adjustment along with your face to face interview before members of the Board is considered, as well as your release plans.

The Board feels to grant parole at this time would deprecate the seriousness of the offenses, and promote disrespect to the criminal justice system.

Therefore, parole is denied."

Defendants argue that the trial court erred in finding that the reasons given plaintiff for the denial of his parole were constitutionally insufficient. According to defendants, an inmate does not have a constitutionally protected liberty interest in parole release in Illinois; therefore, they argue, plaintiff is not entitled to due process protections. In the alternative, defendants further contend that even if an Illinois inmate has a liberty interest in parole release, the reasons given plaintiff for the denial of his parole application satisfied the standards of procedural due process.

The due process clauses of the Federal and State Constitutions protect against the deprivation of liberty

or property without due process of law. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) Thus, procedural due process protections are triggered only when a constitutionally protected liberty or property interest is at stake. (*Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709; *Wilson v. Bishop* (1980), 82 Ill. 2d 364, 368.) In *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex* (1979), 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100, the Supreme Court held that a State statute governing parole determinations may create a legitimate expectation of release on parole. In finding that the Nebraska statute at issue in that case created a protectable liberty interest in parole release, the Supreme Court emphasized that its holding was based on the unique structure and language of the Nebraska provision and noted that "whether any other state statute provides a protectable entitlement must be decided on a case-by-case basis" (*Greenholtz*, 442 U.S. at 12, 60 L. Ed. 2d at 678-79, 99 S. Ct. at 2106).

We need not determine here whether the Illinois parole release statute, section 3—3—5(c) of the Code (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1003—3—5(c)), creates a constitutionally protected liberty interest in parole release in Illinois. Assuming that such a liberty interest arises from the statute (see *United States ex rel. Scott v. Illinois Parole & Pardon Board* (7th Cir. 1982), 669 F.2d 1185 (finding liberty interest under Illinois parole statute)), we conclude that the statement of reasons given plaintiff for the denial of his parole application would satisfy due process requirements.

The test that has been applied in determining whether a statement of reasons for denying parole is constitutionally adequate is as follows:

" 'To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a re-

viewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the Board's decision is based upon consideration of all relevant factors and it furnishes to the inmate both the grounds for the decision *** and the essential facts upon which the Board's inferences are based.' " *United States ex rel. Scott v. Illinois Parole & Pardon Board* (7th Cir. 1982), 669 F.2d 1185, 1190 (quoting *United States ex rel. Johnson v. Chairman of New York State Board of Parole* (2d Cir. 1974), 500 F.2d 925, 934, *dismissed as moot* (1974), 419 U.S. 1015, 42 L. Ed. 2d 289, 95 S. Ct. 488).

As the Supreme Court noted in *Greenholtz*, due process does not require a parole board "to specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release. *** To require the parole authority to provide a summary of the evidence would tend to convert the process into an adversary proceeding and to equate the Board's parole-release determination with a guilt determination." (*Greenholtz*, 442 U.S. at 15-16, 60 L. Ed. 2d at 680-81, 99 S. Ct. at 2108.) "If the Parole Board cites to facts upon which its reasons for denial of parole can be justified, due process is met." *Heirens v. Mizell* (7th Cir. 1984), 729 F.2d 449, 467.

Applying the standards discussed above in Illinois, Federal courts have held that where the Board denies parole on the ground that release would deprecate the seriousness of the offense and promote disrespect for the law, due process standards are met if the Board lists the offense of which the inmate was convicted and indicates the extreme length of the sentence imposed. (*Heirens*, 729 F.2d at 467; *Walker v. Prisoner Review Board* (7th Cir. 1982), 694 F.2d 499, 502; *Taylor v. Taylor* (N.D. Ill. 1984), 595 F. Supp. 602, 604 (lengthy sentence may show

that trial judge found inmate's criminal conduct especially brutal or heinous).) We find that the statement of reasons provided to plaintiff here fulfilled these requirements. The Board denied plaintiff's parole application in 1988 on the ground that release at that time would deprecate the seriousness of the offense and promote disrespect for the law. The Board provided the factual basis underlying its conclusion, noting that plaintiff had been convicted of murder and that the trial court had imposed a lengthy sentence of 100 to 200 years' imprisonment. In fact, the Board's rationale went beyond the minimum requirements of *Heirens*, *Walker*, and *Taylor* and noted, as an additional circumstance, that the murder committed by plaintiff was "the shooting death of an East St. Louis police officer."

Citing *Scott*, plaintiff argues that unless the Board automatically denies parole to all inmates convicted of murdering police officers, the statement of reasons given him for the denial of his parole application is insufficient. In *Scott*, the Board's statement explained that releasing Scott on parole at that time would have deprecated the severity of the crime he committed. The Board noted that Scott had been convicted of the offense of murder and received a 25- to 40-year sentence of imprisonment. The *Scott* court held that unless the Board's practice was to automatically deny parole to inmates whose commitment offense was murder, the statement of reasons given Scott was inadequate. Therefore, the court remanded the case to determine whether that was indeed the Board's practice. The court explained in *Scott* that the inadequacy of the Board's rationale in that case stemmed from the Board's failure to "consider[ ] the inmate's specific conduct, and not just the statutory offense for which he had been found criminally liable." *Scott*, 669 F.2d at 1191.

The statement of reasons given plaintiff here is readily distinguishable from that given the inmate in *Scott*. First, the Board's rationale in *Scott* did not indicate that the inmate received a particularly lengthy sentence, unlike the rationales here and in *Taylor* and *Walker*. In addition, in plaintiff's case, the Board noted not only the statutory offense and the lengthy prison sentence imposed, but the fact that the murder committed by plaintiff was the "shooting death of an East St. Louis police officer." In contrast to the Board's rationale in *Scott*, then, it is evident that the Board here specifically considered plaintiff's conduct and not merely the statutory offense of which he was convicted.

Contrary to plaintiff's assertions, the rationales found inadequate in *United States ex rel. Stevens v. Klincar* (N.D. Ill. 1983), 566 F. Supp. 335, *Horton v. Irving* (N.D. Ill. 1982), 553 F. Supp. 213, and *Ware v. Kaufman* (N.D. Ill. June 3, 1982), No. 80—C—3209, do not contain substantially more grounds and underlying facts than the rationale plaintiff received from the Board here. In both *Horton* and *Ware*, the Board's rationales were held to be inadequate because they failed to point to any facts or circumstances in support of the decision to deny parole. As previously discussed, the rationale given in the present case contained the " 'essential facts upon which the Board's inferences [were] based' " (*Scott*, 669 F.2d at 1190, quoting *Johnson*, 500 F.2d at 934).

The court in *Stevens* found that although the Board's rationale contained a number of facts, the reason the Board gave for denying parole was insufficient. After reciting some of the circumstances of the inmate's offense, the Board provided the inmate with the following reason for denying his parole: "the members feel that you are not a fit person to serve your sentence outside the institution." (*Stevens*, 566 F. Supp. at 337.) The court in *Stevens* found that this conclusion was a "meaningless

statement" that failed to give the inmate any insight into why parole was denied. (*Stevens*, 566 F. Supp. at 338.) In contrast, the reason given plaintiff in the case before us—that plaintiff's release would deprecate the seriousness of the offense he committed and promote disrespect for the law—indicates specifically the risk with which the Board was concerned when it denied plaintiff's parole application. Thus, the ground given plaintiff for the Board's decision is constitutionally adequate. (See *Walker v. Prisoner Review Board* (7th Cir. 1982), 694 F.2d 499.) Assuming that a protectable liberty interest arose by operation of the Illinois parole release statute, we conclude that the Board's explanation for its decision denying plaintiff parole satisfied the requirements of due process.

Accordingly, because we find that section 3—3—5(f) of the Code is an *ex post facto* law as applied to plaintiff, we hold that the circuit court did not err in declaring that provision unconstitutional and in ordering defendant Board members to grant plaintiff annual parole hearings. Additionally, we hold that the circuit court erred in ruling that the reasons given plaintiff for denial of his parole application were insufficient as a matter of law and in ordering defendants to grant plaintiff a new parole hearing within 60 days.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part.

*Affirmed in part and reversed in part.*

JUSTICE WARD, dissenting:

I must respectfully dissent.

I believe an inmate does have a constitutionally protected interest in parole release and that the Board's statement of reasons for its denial of defendant's parole application was insufficient to satisfy his constitutional interest.

The Board's purported explanation of reasons for its denial of the application reads:

"We the members of the Prisoner Review Board have carefully reviewed all aspects of your case for possible parole consideration. The record reflects that you are serving a sentence of 100 to 200 years for the offense of murder. The shooting death of an East St. Louis police officer.

Your institutional adjustment along with your face to face interview before members of the Board is considered, as well as your release plans.

The Board feels to grant parole at this time would deprecate the seriousness of the offenses, and promote disrespect to the criminal justice system.

Therefore, parole is denied."

I recognize that it well may be that under what are the undisclosed circumstances, Tiller is not entitled to parole consideration, but he is entitled to a meaningful statement of reasons for refusal of his application. Some will be apprehensive that much of the statement is simply an example of institutional cant that could and may be routinely sent to rejected applicants.

The Board's statement informs the inmate that the record reflects he is serving a sentence for murder and that the murder was that of a police officer, of which the inmate certainly is already aware. It says that his institutional adjustment and interview before the Board were considered as well as his plans for afterlife, if and when he is released. He is not advised how the Board viewed his adjustment—whether, for example, he is viewed as a disciplinary problem or a well-adjusted inmate or simply as an unrepentant. The inmate is not informed of the impression he made in his interview and on his statement of release plans. If the impression on either was unfavorable he does not learn the reason for the unfavorable impression so that he might question it or attempt to ex-

plain the cause of the impression or avoid making it in future applications.

The statement went on to say that the Board felt that if it granted parole then it would deprecate the seriousness of the offense and promote disrespect of the criminal justice system. It is interesting to observe that similar language was used as a reason for denying the petition in *United States ex rel. Scott v. Illinois Parole & Pardon Board* (7th Cir. 1982), 669 F.2d 1185. There the Board's statement explained that releasing Scott on parole at the time would have deprecated the severity of the crime he committed. The Board, as it did here, had noted that Scott had been convicted of murder and had received a 25- to 40-year sentence. The court held that unless the Board's practice was to automatically deny parole to inmates imprisoned for murder, the statement of reasons given Scott was inadequate. The court remanded to determine whether or not that was the practice of the Board. The *Scott* court said that the inadequacy of the Board's rationale stemmed from the Board's failure to "consider[ ] the inmate's specific conduct, and not just the statutory offense for which he had been found criminally liable." (*Scott*, 669 F.2d at 1191.) The majority judges that its holding is consistent with *Scott*, but I believe that the failure of the Board in *Scott* is matched here.

I consider that to satisfy constitutional standards something more than what appears to be a type of form letter is required. I think the inmate must be informed what really are the reasons for the denial of a petition which importantly affects his life and maybe the lives of others—it may be antisocial behavior while incarcerated, defiance of authority, a history of recidivism that makes him a poor candidate for parole until there is more evidence of rehabilitation, etc. The validity of requiring that the Board's reasons be articulated in its statement to the

inmate is illustrated by the holding in *United States ex rel. Stevens v. Klincar*, where the Board gave this reason for denying parole: "[T]he members feel that you are not a fit person to serve your sentence outside the institution ***." (*United States ex rel. Stevens v. Klincar* (N.D. Ill. 1983), 566 F. Supp. 335, 337.) The *Stevens* court concluded that this was a "meaningless statement" that did not give the inmate any insight into why parole was denied. I submit that the statement here, suggestive of language from an administrative style book, was inadequate to satisfy the inmate's constitutional interest.

The majority observes that in *Heirens v. Mizell* (7th Cir. 1984), 729 F.2d 449, 467, it was stated: "If the Parole Board cites to facts upon which its reasons for denial of parole can be justified, due process is met." Looking to the opinion in *Heirens* one finds a near model statement of facts as the rationale for refusing to grant parole. Here, in comparison, there are no facts given, in my opinion, to satisfy due process.