DAVID GOINS *et al.*, Petitioners-Appellants, v. PAUL KLINCAR, Chairman, Illinois Prisoner Review Board, *et al.*, Respondents-Appellees.

Third District   Nos. 3—91—0269, 3—91—0271, 3—91—0272 cons.

Opinion filed February 25, 1992.

David P. Goins, of Joliet, appellant *pro se.*

Ralph Bellamy, of Joliet, appellant *pro se.*

George Horton, of Joliet, appellant *pro se.*

Roland W. Burris, Attorney General, of Springfield (Jan E. Hughes, Susan Frederick Rhodes, and Claudia Sainsot, Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE GORMAN delivered the opinion of the court:

The three petitioners in this case, George Horton, David Goins, and Ralph Bellamy, individually filed actions in *mandamus*, alleging that the Illinois Prisoner Review Board (Board) had violated their due process rights by arbitrarily denying them parole. Bellamy additionally alleged that a recent amendment to section 3—3—5(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1003—3—5(f)), which allowed the Board to set parole hearings more than one year apart, is an *ex post facto* law as applied to him. The circuit court dismissed their complaints. The petitioners appeal. This court, on its own motion, ordered the consolidation of these appeals because they raised the common claim that the Board arbitrarily denied parole.

In 1971, George Horton was convicted of murder and sentenced to 100 to 150 years' imprisonment. He appeared before the Board every year from 1980 through 1990, and was denied parole each time.

In 1978, David Goins was convicted of murder and sentenced to 25 to 50 years' imprisonment. He appeared before the Board every year from 1986 through 1991. He too was denied parole each time.

In 1970, Ralph Bellamy was convicted of murder and sentenced to a term of 100 to 199 years' imprisonment. He appeared before the parole board in 1979, 1980, 1982, 1983, 1984, 1985, 1986, 1987, 1988, and 1991. He was likewise denied parole each time.

On appeal, the petitioners all contend that they were denied due process because the reasons the Board gave for denying parole were inadequate. In support of that contention they note that in each of their cases, the Board indicated that parole was denied because "parole at this time would deprecate the serious nature of the offense and promote disrespect for the law." The petitioners suggest that this language is mere "boiler plate" and not an adequate reason. In support of their contention, they argue that because other inmates convicted of murder have been paroled, the nature of the crime is not an

adequate reason for denying parole. See *United States ex rel. Scott v. Illinois Parole & Pardon Board* (7th Cir. 1982), 669 F.2d 1185.

The due process clauses of the Federal and State Constitutions protect against deprivation of liberty or property without due process of law. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) Consequently, procedural due process protections are triggered only when a constitutionally protected liberty or property interest is at stake. *Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701; *Wilson v. Bishop* (1980), 82 Ill. 2d 364, 412 N.E.2d 522.

We find, however, that we need not determine here whether the Illinois parole release statute (Ill. Rev. Stat. 1989, ch. 38, par. 1003—3—5(c)) creates a constitutionally protected liberty interest. Even if such a liberty interest arises, the reasons the Board gave the petitioners for the denial of their parole applications satisfied due process requirements. See *Tiller v. Klincar* (1990), 138 Ill. 2d 1, 561 N.E.2d 576.

■■ ■ The test to determine whether reasons for denying parole are constitutionally sufficient is whether the reasons are adequate to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. (*Tiller v. Klincar* (1990), 138 Ill. 2d 1, 561 N.E.2d 576.) Further, detailed findings of fact are not required if the Board considered all the relevant factors and furnished the inmate with both the grounds for its decision and the facts upon which inferences were drawn. (*Tiller v. Klincar* (1990), 138 Ill. 2d 1, 561 N.E.2d 576.) Where the Board denies parole on the ground that release would deprecate the seriousness of the offense and promote disrespect for the law, due process standards are met if the Board lists the offense of which the inmate was convicted and indicates the extreme length of the sentence imposed. *Tiller v. Klincar* (1990), 138 Ill. 2d 1, 561 N.E.2d 576.

In the instant cases, we find that the Board adequately set forth reasons for denying parole. In denying parole for Horton, the Board stated:

"The Board has reviewed material in your file including but not limited to the Statement of Facts, institutional adjustment, release plans and your personal appearance.

The file reflects that you were convicted of murder and sentenced to 100-150 years. (1971 indictment).

In addition, you were sentenced to 3 years consecutively for an escape from Stateville Prison which occurred in 1982. Code-

fendants were also given sentences for their involvement in your murder conviction.

Your prior history includes 1-3 years for armed robbery, and 1-1-1 day for burglary. Your current adjustment appears good, and the Board notes you have received no major disciplinary reports since 1984.

Release plans were reviewed and discussed with you.

Parole, however, is denied at this time because of the brutal nature of the offense and your conviction for escaping. In addition the Board is of the opinion that parole, at this time, would deprecate the seriousness of your offense and promote disrespect for the law.

Parole denied."

In determining that Goins should not be granted parole, the Board concluded:

"Members of the Prisoner Review Board in making a decision to grant or deny parole have reviewed the following not to the exception of other materials: statement of facts of crime and sentence imposed, prior criminal record, institutional adjustment, parole plans and the interview with the inmate and his visitors. Letters on behalf and protests including the State's Attorney of Cook County is noted.

Presently Mr. Goins is serving 25-50 years for murder. The instant crime occurred when the resident and codefendants killed the proprietor of a food store and robbed the patrons in the course of an armed robbery.

This is a first adult incarceration. Institutional adjustment is much improved and academic goals are to be commended. Parole plans to live and work in Chicago were weighed in the decision.

After deliberation of the above the Board denies parole due to the brutal and senseless nature of the offense. To grant parole at this time would deprecate the seriousness of the crime and promote a disrespect for the law."

After considering Bellamy's application for parole, the Board stated:

"Resident Bellamy was personally interviewed at the Stateville Correctional Center where he is serving sentences of 100-199 years for the offense of the murder of a police officer during the performance of his duties, 15-20 years for the offense of attempt murder and 25-50 years for 2 counts of armed robbery, the latter sentence to be served consecutively to the pro-

ceeding [*sic*] sentences. The State's Attorney of Cook County continues to object to the granting of parole at this time, as well as other members of the free community.

From a reading of the file it is apparent that Inmate Bellamy's institutional adjustment is improving, as he is now in "A" Grade, medium security. Parole plans were noted and discussed.

The Board concludes, given the gravity of the instant offense, which was committed only six months after the expiration of a sentence of 3-10 years for previous offenses of armed robbery, that there still exists a risk of further nonconforming behavior, if released. It is concluded, in En Banc session, that parole at this time would, in fact, deprecate the serious nature of the offense and promote disrespect for law and order.

Parole is, therefore, denied."

These statements do not indicate that parole was denied merely because the petitioners were convicted of murder. Rather, the Board adequately set forth reasons explaining why parole was being denied. The Board indicated that among the factors it considered in denying parole were the nature of the offenses, the length of the sentences imposed, escape convictions, previous criminal conduct, the objections of the State's Attorney, and the objections of other members of the free community. Even assuming that a protectable liberty interest arose by operation of the Illinois parole release statute, the Board's explanations for its decisions denying parole satisfied the requirements of due process. (See *Tiller v. Klincar* (1990), 138 Ill. 2d 1, 561 N.E.2d 576.) Accordingly, we find that the circuit court properly dismissed the petitioners' due process complaints.

We now turn our attention to Bellamy's contention that the current version of section 3—3—5(f) of the Unified Code of Corrections is an *ex post facto* law as applied to him. Bellamy's contention is founded on the fact that subsequent to his conviction, section 3—3—5(f) was amended to provide for hearings every three years rather than annually. Ill. Rev. Stat. 1989, ch. 38, par. 1003—3—5(f).

■ The Illinois Supreme Court has made it clear that section 3—3—5(f) is an *ex post facto* law when its amended version is applied to prisoners who were convicted prior to the amendment. (*Tiller v. Klincar* (1990), 138 Ill. 2d 1, 561 N.E.2d 576.) However, since the release of the Illinois Supreme Court's decision in *Tiller*, Bellamy has been scheduled for parole hearings on an annual basis. Because the amended version of section 3—3—5(f) is no longer being applied to

Bellamy, the issue is moot. Accordingly, we find that the circuit court properly dismissed Bellamy's complaint.

The judgments of the circuit court of Will County are affirmed.

Affirmed.

McCUSKEY and HAASE, JJ., concur.