48 F.3d 1221
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Duffie S. CLARK, Plaintiff-Appellant,
v.
James R. THOMPSON, et al., Defendants-Appellees.
 No. 93-2478.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 21, 1994.[1]
Decided Feb. 27, 1995.
 
 Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff filed this civil rights suit pursuant to 42 U.S.C. Sec. 1983,[2] challenging Illinois parole procedures on the basis of ex post facto, due process, and equal protection violations. The district court dismissed the suit pursuant to Fed.R.Civ.P. 12(b)(6).
 
 Background
 
 2
 In 1971, plaintiff was sentenced to two concurrent terms of 40 to 140 years' imprisonment for murdering two 13-year-old boys. In 1981, plaintiff became eligible for parole. Eight times between 1981 and 1990, plaintiff sought parole and eight times his request was denied by the Illinois Pardon Review Board.
 
 
 3
 When reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedures, we view all facts alleged in the complaint as well as any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir.1990). Dismissal is appropriate only if it appears to a certainty that the plaintiff cannot establish any set of facts which would entitle him to the relief requested. Id.
 
 Ex Post Facto and Three-Member Panels
 
 4
 Plaintiff first argues that the Illinois parole statute violates the Ex Post Facto clause. We disagree. In 1971, Illinois provided that "the Board shall consist of at least three members ..." Ill.Rev.Stat., ch. 108, par. 206 (1971).[3] In 1985, the statute was amended to provided that parole for prisoners who receive a minimum sentence of 20 years or more shall be determined "by a majority vote" of the Board (referred to in Illinois as "en banc ").[4] Of the 12-member Board, then, plaintiff must receive seven votes in order to secure parole.[5]
 
 
 5
 The changes in the language of the applicable statute do not criminalize previously innocent acts, aggravate the punishment for a prior crime, increase the punishment for a prior crime, or change the amount of proof necessary to convict. Dobbert v. Florida, 432 U.S. 282, 292 (1977), citing Hopt v. Utal, 110 U.S. 574 (1884). Moreover, the identical ex post facto argument has been rejected by the district courts in our circuit numerous times. See, e.g., Blackwell v. Klincar, No. 84 C 8705, 1990 WL 92767 (N.D.Ill. June 22, 1990) (unpublished order) (no ex post facto violation); Stringer v. Lane, No. 86 C 8881 (N.D.Ill. Sept. 26, 1989) (unpublished order) (no ex post facto, due process or equal protection violations); Taylor v. Prisoner Review Board, No. 87 C 1753 (N.D.Ill. Aug. 7, 1989) (unpublished order) (no ex post fact, due process or equal protection violations); United States ex rel. Chaka, 685 F.Supp. 1069 (N.D.Ill.1988) (no ex post facto or due process violations); Davis-El v. O'Leary, 626 F.Supp. 1037 (N.D.Ill.1986) (no ex post facto, due process, or equal protection violations); Gonzales v. Illinois Prisoner Review Board Members, No. 85 C 3811 (N.D.Ill. May 24, 1985) (unpublished order) (no change in law; changes are procedural in nature).
 
 
 6
 We agree with the holding of these cases. In order for a law to violate the ex post facto prohibition, it must be both retrospective and disadvantageous to the offender who is affected by it. Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), Heirens v. Mizell, 729 F.2d 449, 459 (7th Cir.1984). The Board has always retained the power to review a parole request before the entire Board. The statute in 1971 permitted the Board, in its discretion, to conduct parole hearings before at least three members. In addition, the Board has long had the practice of hearing certain cases en banc. Moreover, the statute imposes no additional punishment. Instead of seeking two out of three votes from the three-member panel, plaintiff seeks seven out of twelve votes from the Board sitting en banc. Thus, the new statute merely codifies the Board's long-time practice and is not a new disadvantage imposed on prisoners. Consequently, it does not violate the ex post facto prohibition of the Constitution.[6] Blackwell, 1990 WL 92767 at * 6, 1990 U.S.Dist. Lexis 7761 at * 15; Stringer, 1989 WL 118038 at * 3; Chaka, 685 F.Supp. at 1072-73; Davis-El, 626 F.Supp. at 1042; Taylor, 1989 WL 91840 at * 3-4. Accord, Taylor v. Lane, 191 Ill.App.3d 101, 103, 546 N.E.2d 1178 (1989); Hanrahan v. Klincar, 157 Ill.App.3d 464, 521 N.E.2d 583 (1988).
 
 Due Process and Three-Member Panels
 
 7
 Plaintiff attacks the same provisions of the statute under due process grounds. This argument fails for the same reasons as those listed above. Plaintiff could not have a legitimate expectation of a three-member panel where the Board has always retained the power to use more than three members, and had the practice of doing so in more serious cases. Chaka, 685 F.Supp. at 1073; Davis-El, 626 F.Supp. at 1042; Stringer v. Lane, No. 86 C. 8881 (N.D.Ill.1989) (unpublished order), 1989 WL 118038 at * 3; Taylor v. Prisoner Review Board, No. 87 C 1753 (N.D.Ill. Aug. 7, 1989) (unpublished order), 1989 WL 91840 at * 3-4.
 
 
 8
 Due Process and Failure to Provide Annual Hearings
 
 
 9
 In 1971, a Board of Parole rule required annual hearings. The 1982 and 1990 parole hearings were each held more than 12 months after the prior hearing.[7] Illinois law grants eligible prisoners the right to an annual parole hearing. Ill.Rev.Stat. ch. 38, par. 1003-3-5(f) (1973) ("rehearing not more than 12 months from the date of denial"). This was changed in 1977 (ch. 38, par. 1003-3-5(f), now 730 ILCS 5/3-3-5(f) (1992), to permit a space of three years between parole hearings. The 1977 statute, however, cannot be applied to any prisoner sentenced under the 1973 law without violating the ex post facto prohibition, Tiller v. Klincar, 138 Ill.2d 1, 3, 561 N.E.2d 575 (1990). See also Rodriguez v. United States Parole Commission, 594 F.2d 170 (7th Cir.1979). In Illinois, all inmates now receive annual parole hearings. See Goins v. Klincar, 225 Ill.App.3d 961, 588 N.E.2d 420 (1992); Sterling v. Klincar, 226 Ill.App.3d 675, 589 N.E.2d 1149 (1992).
 
 
 10
 Plaintiff does not argue that he is not now receiving annual parole hearings. The problem here is the over-12-month violations which occurred in 1982 and 1990. Plaintiff does not ask for an early release based on these two violations, See Clark, 906 F.2d at 665, even if such relief were possible. He asks instead for injunctive relief, which has been taken care of by Tiller and the resulting changes in the Board's procedures.[8] Under the case-or-controversy requirement of Article III, a court can only decide cases in which the litigant has suffered some actual injury that can be redressed by a favorable judicial decision. Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70 (1983). An administrative agency's voluntary cessation of an illegal activity renders a case moot only if the agency can prove there is no reasonable likelihood that the wrong will be repeated. United States v. W.T. Grant, 345 U.S. 629 (1953); Jackson v. Illinois Prisoner Review Board, 856 F.2d 890, 892. Thus, "mootness mingles the principles of relief in another proceeding with the principles of self-correction." 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Jurisdiction 2d Secs. 3533.2-3533.6 (1984); see also Thomas v. Fielder, 884 F.2d 990, 995 (7th Cir.1989).
 
 
 11
 Given the change in Illinois parole procedures, and the length of time since these changes were put into effect, we find no reason to doubt the Board's sincerity in continuing to provide annual hearings that comport with the requirements of constitutional law. Cf. Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir.1988) (self-correction by Parole Board; remand for further inquiry as to determination of mootness). The district court properly dismissed this claim as moot. See Jean v. Nelson, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (new parole policies provide petitioners with nondiscriminatory parole consideration, and thus claim is moot); Kremens v. Bartley, 431 U.S. 119, 130 (1977) (statutory changes made while a lawsuit is pending, and which eliminate the basis for the statutory challenge, render the challenge moot); Flittie v. Erickson, 724 F.2d 80, 82 (8th Cir.1983) ("capable of repetition, yet evading review" exception not applicable in light of corrective action undertaken since occurrence complained of, and there was no reason to expect same procedural problems to recur in future proceedings); Tedder v. Board of Parole, 527 F.2d 593, 593-95 (9th Cir.1975) (amendment of regulation governing parole procedures rendered moot prisoner's challenge to the original regulation).
 
 Due Process and Insufficient Reasons
 
 12
 Plaintiff next contends that he was denied due process when the Board gave vague, constitutionally insufficient reasons for its denial of plaintiff's 1981 request for parole. The district court properly found that, while the Board decision was vague, the issue is now moot because the Board has subsequently given plaintiff eight decisions with sufficient reasons.[9] See Dial v. Coler, 791 F.2d 78, 81 (7th Cir.1986). Plaintiff also challenges the 1990 and 1992 findings of the Board. This issue was not raised in the district court and therefore is waived for purposes of appeal.[10] See Colon v. Schneider, 899 F.2d 660, 670 (7th Cir.1990).
 
 Equal Protection
 
 13
 It is not clear what equal protection claim plaintiff makes. However, he does not allege that he is a member of a protected class, and the state clearly has a rational basis for requiring that prisoners who "committed more serious offenses have their parole requests reviewed by the entire Prisoner Review Board in order to insure protection against the[ir] premature release." Davis-El, 626 F.Supp. at 1042. Accord Blackwell, 1990 WL 92767 at * 6, 1990 U.S.Dist. Lexis 7761 at * 16; Stringer v. Lane, No. 86 C. 8881 (N.D.Ill.1989) (unpublished order), 1989 WL 118038 at * 4; Taylor v. Prisoner Review Board, No. 87 C 1753 (N.D.Ill. Aug. 7, 1989) (unpublished order), 1989 WL 91840 at * 3-4.
 
 Jurisdiction of Board
 
 14
 Plaintiff argues that the Board lacked jurisdiction to entertain his parole applications because the Board was necessarily biased since it also reviewed decisions to revoke good conduct credits. We agree with the district court that plaintiff offers nothing at all to support this assertion. Under Illinois law, the Board has the authority to review the revocation of good conduct credits (730 ILCS 5/3-3-5 (1992).) Nothing in the record indicates the Board was biased against plaintiff in particular, or even that the Board has reviewed a decision to revoke his own good conduct credits.
 
 CONCLUSION
 
 15
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the brief, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [2]
 In Clark v. Thompson, 960 F.2d 663, 665 (7th Cir.1992), this court held that Clark's challenge to parole procedures does not draw into question the basis of confinement and therefore it need not be brought as a writ for petition of habeas corpus. We remanded for the district court to decide the case on the merits. The case now returns to this court
 
 
 [3]
 This was repealed by P.A. 80-362, effective January 1, 1973. The 1973 statute also provided for three or more members. Ill.Rev.Stat., ch. 28, par. 1003-3-9(e) (1973)
 
 
 [4]
 The statute was again amended in 1987, providing for en banc hearings when the prisoner was convicted of first degree murder or when his sentence is 20 years or more. Ill.Rev.Stat., ch. 38, par. 1003-3-2(a)(2) (1987), now 730 ILCS 5/3-3-2(a)(2) (1992)
 
 
 [5]
 Defendant offers an absurd argument based on the hope that 5 out of the 12 members could miss a meeting of the board, leaving only 7 members:
 "The majority of twelve members would be seven members on a Board panel. In such a situation, to secure parole, it would be necessary for Clark to convince four of those seven members, or 57% of the Board panel, that he should be paroled. If, however, Clark were facing a three-member panel as he desires, he would have to convince two of the three members, or 66% of the Board panel."
 
 
 [6]
 We do not reach the question of whether the parole statute at issue is merely procedural in nature. See Dobbert v. Florida, 432 U.S. 282, 292 (1977); Prater v. United States Parole Commission, 802 F.2d 948 (7th Cir.1986) (en banc); Blackwell, 1990 WL 92767 at * 5, 1990 U.S.Dist. Lexis 7761 at * 15 (en banc change is merely a procedural change and therefore does not trigger an ex post facto analysis); Graham v. Thompson, Nos. 88 C 3323, 88 C 3499, 88 C 3500 (N.D.Ill. June 10, 1988) (unpublished order), 1988 WL 64256 at * 3 (same); Gonzales, 1985 WL 1576 at * 1 (same)
 
 
 [7]
 The parole hearing plaintiff received in the relevant time period include: February 4, 1981; December 1, 1982, November 2, 1983, November 5, 1984; November 6, 1985; November 6, 1986; November 2, 1988; November 8, 1990
 
 
 [8]
 Plaintiff also asks for money damages, which could not be more than nominal, see Shango v. Jurich, 965 F.2d 289, 295 (7th Cir.1992), but he does not allege any injury, and would in all events probably be barred by the Eleventh Amendment, see Pennhurst States School & Hospital v. Alderman, 465 U.S. 89, 100 (1984)
 
 
 [9]
 The Board's repeated rejections of plaintiff's parole requests rest upon the heinous nature of the crime
 
 
 [10]
 Moreover, the argument makes little sense since the 1990 and 1992 findings were just as specific as the 1982, 1983 and 1984 findings (specifying the brutality and senselessness of the murders of two 13-year-olds), and those findings are not challenged