(No. 52136.—

ROBERT JOE WILSON, Appellant, v. MARCEIL GREEN-HALGH BISHOP *et al.*, Appellees.

*Opinion filed October 17, 1980.*

Theodore Van Winkle, of Van Winkle & Van Winkle, of McLeansboro, for appellant.

Maurice E. Gosnell, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, and Howard W. Campbell and Craig Hedin, of Campbell, Furnall, Moore & Jacobsen, of Mt. Vernon, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This litigation arose in 1976 when it was discovered

that commercial quantities of oil underlay a portion of a 72-acre tract of land in White County in which the surface area is owned by plaintiff, Robert Joe Wilson. The dispute concerns ownership of an undivided one-third interest in the oil and gas, which plaintiff claims pursuant to the operation of the dormant mineral interests act (the Act) (Ill. Rev. Stat. 1975, ch. 30, pars. 197, 198). The circuit court of White County, however, held that those sections "violate the due process and contract clauses of the Constitutions of the State of Illinois and the United States." The appeal comes directly to us pursuant to our Rule 302(a). 73 Ill. 2d R. 302(a).

Plaintiff alleged that defendant Marceil Greenhalgh Bishop, and defendants Donald B. Driscoll and Ann Driscoll, individually and as trustees under the will of Beatrice M. Driscoll, abandoned their ownership of the disputed interest by failing to file written notices in the recorder's office of White County or by otherwise preserving their ownership as provided in the following sections of the Act:

> "Sec. 1. Any interest in oil, gas, or associated hydrocarbons, liquid or gaseous, in any land owned by anyone other than the owner of the surface, which has not been devised, sold, leased, mortgaged or transferred by instrument recorded in the office of the recorder of deeds in the county where such interest is located for a period of 25 years shall, in the absence of the actual production of oil, gas or associated hydrocarbons, liquid or gaseous, from such land, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized or included in unit operations therewith, during such period of 25 years, be deemed abandoned, unless the owner thereof, within 3 years after the effective date of this Act or within 25 years after the last devise, sale, lease, mortgage or transfer of record of such interest or actual production of oil, gas or associated hydrocarbons, liquid or gaseous, from such land, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized, or included in unit operations therewith, whichever is later,

records a claim of interest as provided in this Act. Any interest in oil, gas or associated hydrocarbons, liquid or gaseous, deemed abandoned as herein provided shall vest as of the date of such abandonment in the owner of the surface."

"Sec. 2. Any interest in oil, gas or associated hydrocarbons, liquid or gaseous, referred to in this Act may be preserved by the recording within the period specified in this Act a written notice in the recorder's office for the county where such interest is located, which notice shall be verified by oath, describe the land and the nature of the interest claimed, give the name and address of the person or persons claiming the interest, and state that such person or persons desire to preserve the interest and do not intend to abandon same. This recording of notice preserves such interest from abandonment for a period of 25 years thereafter when, if the nondormant character of the interest has not been evidenced by sale, lease, mortgage or transfer by instrument recorded in the recorder's office for the county where such interest is located, oil, gas or associated hydrocarbons, liquid or gaseous, actually produced from those lands, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized or included in unit operations therewith, or a like notice filed, such interest shall be deemed abandoned. In the absence of prior abandonment, such interest may be preserved indefinitely by the filing of notices or by other actions evidencing nondormancy of the interest in accord with this Act at intervals of not more than 25 years." (Ill. Rev. Stat. 1975, ch. 30, pars. 197, 198.)

Plaintiff maintains that the statute automatically vested the disputed interest in him upon failure of defendants to comply with the statutory requirements, and that the oil and gas leases entered into between defendants and J. D. Turner in 1975 are null and void. Following a bench trial the court entered a decree which included findings that the interests of defendants Bishop and Driscoll constituted a severed freehold estate entitled to the usual rights and incidents of vested ownership, and that the quoted sections of the Act deprive defendants of their

property without due process of law and impair the obligations of contract. The court accordingly declared that the oil and gas leases between defendants and Turner are valid, and ordered the impounded oil proceeds paid to defendants in proportion to their ownership interests.

In this appeal, plaintiff argues that the trial court erred in treating the rights of a severed mineral interest owner as vested property rights, in refusing to consider the Act's effect as a statute of limitations, and in finding that plaintiff did not acquire the mineral interests of defendants. It is well established "that the constitutional guarantees of procedural due process only become operative where there is an actual or threatened impairment or deprivation of 'life, liberty or property.' (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2.) Therefore, the starting point in any procedural due process analysis is a determination of whether one of those protectable interests is present, for if there is not, no process is due." (*Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 293-94, *appeal dismissed* (1980), 444 U.S. 1062, 62 L. Ed. 2d 744, 100 S. Ct. 1001; see *Memphis Light, Gas & Water Division v. Craft* (1978), 436 U.S. 1, 9-10, 56 L. Ed. 2d, 30, 39, 98 S. Ct. 1554, 1560-61; *Board of Regents v. Roth* (1972), 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556, 92 S. Ct. 2701, 2705; *Perry v. Sindermann* (1972), 408 U.S. 593, 599, 33 L. Ed. 2d 570, 578, 92 S. Ct. 2694, 2698.) Recognition of protected property interests requires an extraconstitutional inquiry into existing rules or provisions in State law. As the United States Supreme Court concluded in *Roth*:

> "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims

of entitlement to those benefits." (408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.)
See *Memphis Light, Gas & Water Division v. Craft* (1978), 436 U.S. 1, 9, 56 L. Ed. 2d 30, 39, 98 S. Ct. 1554, 1560; *Goss v. Lopez* (1975), 419 U.S. 565, 572-73, 42 L. Ed. 2d 725, 733-34, 95 S. Ct. 729, 735; *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 294-95.

It has long been recognized in this State that a severed mineral interest is a freehold estate entitled to the customary incidents of ownership. (*Pickens v. Adams* (1955), 7 Ill. 2d 283; *Miller v. Ridgley* (1954), 2 Ill. 2d 223; *Jilek v. Chicago, Wilmington & Franklin Coal Co.* (1943), 382 Ill. 241.) This recognition, moreover, represents the position overwhelmingly embraced by other States. (*Wheelock v. Heath* (1978), 201 Neb. 835, 272 N.W.2d 768; *Chicago & North Western Transportation Co. v. Pedersen* (1977), 80 Wis. 2d 566, 259 N.W.2d 316; *Trustees of Tufts College v. Triple R. Ranch, Inc.* (Fla. 1973), 275 So. 2d 521; 1A W. Summers, Oil and Gas sec. 139 (1954); 54 Am. Jur. 2d *Mines and Minerals* sec. 116 (1971).) It is accordingly clear that the severed mineral interests here under consideration constitute protected property interests entitled to the procedural safeguards which due process requires.

The United States Supreme Court has emphasized that due process of law, at a minimum, prohibits the deprivation of property without providing notice and an opportunity for a hearing appropriate to the nature of the case. (*Memphis Light, Gas & Water Division v. Craft* (1978), 436 U.S. 1, 13-16, 56 L. Ed. 2d 30, 41-43, 98 S. Ct. 1554, 1562-63; *Mullane v. Central Hanover Trust Co.* (1950), 339 U.S. 306, 313, 94 L.Ed. 865, 872-73, 70 S. Ct. 652, 657.) While "the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests

involved" (*Goss v. Lopez* (1975), 419 U.S. 565, 579, 42 L. Ed. 2d 725, 737, 95 S. Ct. 729, 738-39, citing *Cafeteria Workers v. McElroy* (1961), 367 U.S. 866, 895, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743, 1748; *Morrissey v. Brewer* (1972), 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600; see *Powell v. Jones* (1973), 56 Ill. 2d 70, 78), something more is necessary than is here provided.

The Act declares that any severed interest in oil and gas shall be deemed abandoned unless the record owner, within a period of 25 years, engages in the actual production of oil or gas, publicly exercises specified acts of ownership by means of instruments recorded in the office of the recorder of deeds for the county wherein the interest is located, or files with the county recorder a written claim of interest within 3 years after the effective date of the Act or within 25 years from the last public act of ownership, whichever is later. If a written claim of interest is recorded, ownership of the interest is preserved only for the next 25 years. In the absence of one of the required acts, a statutory abandonment occurs and the severed interests automatically vest in the surface owners.

The statute provides no notice of any kind to record owners of oil and gas interests that they must record a statement of their interest in order to prevent the forfeiture of their property interests. While we recognize the beneficial purpose of the statute to facilitate the production of existing oil, gas and other mineral resources, particularly where ownership of the interests has become increasingly fractionalized and scattered, the record owners are vested with property interests entitled to the procedural safeguards of due process. Failure to provide those owners with adequate notice and an opportunity to be heard renders the statutory scheme unconstitutional.

When faced with similar statutes, the courts in other States have reached like conclusions. In *Wheelock v. Heath*

(1978), 201 Neb. 835, 272 N.W.2d 768, the statute declared that severed mineral interests would be deemed abandoned unless the record owner publicly exercised defined ownership rights within a period of 23 years or asserted his interest in an action filed within 2 years after the effective date of the statute. In *Chicago & North Western Transportation Co. v. Pedersen* (1977), 80 Wis. 2d 566, 259 N.W.2d 316, the statute provided for the reversion of severed mineral interests to the surface fee owner unless the owner of the mineral interests registered his ownership and paid an annual registration fee. In *Contos v. Herbst* (Minn. 1979), 278 N.W.2d 732, the statute provided for the forfeiture of severed mineral interests to the State unless the record owner filed a registration statement. In both *Wheelock* and *Pedersen,* the forfeiture occurred without any notice, hearing or compensation to the record owner. The statute in *Contos* provided for notice by publication in a legal newspaper within each county, apparently in three issues, and in two mining publications with a nationwide circulation, and it provided for compensation following forfeiture. The court, however, found that notice by publication of the statutes alone was inadequate and concluded: "We cannot imagine a more clear violation of due process than the failure to provide a hearing before forfeiture." 278 N.W.2d 732, 743, citing *Mullane v. Central Hanover Bank & Trust Co.* (1949), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652.

In *Short v. Texaco, Inc.* (1980), —— Ind. ——, 406 N.E.2d 625, however, the Indiana Supreme Court upheld a statute that provided for the reversion of severed mineral interests to surface owners if, after 20 years, no specified acts of ownership had occurred or no claim of interest had been filed within two years after the effective date of the act. The court concluded that the statute comported with procedural due process upon finding that its enactment, along with the opportunity to prevent reversion of

the mineral interest by filing a claim of interest, provided sufficient notice to affected owners. That court also appears to have found support for its conclusion in the fact that such owners would receive notice and an opportunity to be heard if a court should be called upon at some future time to determine whether the statutory conditions of mandatory reversion had occurred. We are unpersuaded by these reasons and others which analogized the statute to ordinary statutes of limitation. We, moreover, regard that court's reliance on *Anderson National Bank v. Luckett* (1944), 321 U.S. 233, 88 L. Ed. 692, 64 S. Ct. 599, as misplaced inasmuch as the aspect of the statutes there in question did not transfer or significantly affect an owner's rights to his property. The issue there before the court was the validity of a statutory provision requiring banks to file annually with the State a report of deposits dormant for specified numbers of years, a copy of which went to the local sheriff for posting on the courthouse door. The statute required the banks to then transfer custody of those funds to the State, from which the owner could thereafter reclaim them. The issue before the Supreme Court was "whether the procedure by which the state undertakes to acquire the depositors' right to demand payment of the deposits was upon adequate notice to them and opportunity for them to be heard." (321 U.S. 233, 243, 88 L. Ed. 692, 703, 64 S. Ct. 599, 604.) The court held due process requirements satisfied, emphasizing that the owners of the transferred funds—the depositors—were not deprived of their property since they could reclaim it from the State at any time prior to, and for five years following, a judicial decree of abandonment the validity of which was neither questioned nor passed upon. Upholding a statutory provision for the transfer to the State, after posting notice, of the *custody* of dormant bank funds cannot, in our judgment, be viewed as authority for upholding the validity of a statute which transfers,

with no notice, *ownership* of vested real property interests from one private party to another.

Plaintiff would have us validate the statute in question by construing it as a statute of limitations. A similar argument was rejected by the Minnesota Supreme Court in *Contos v. Herbst* (Minn. 1979), 278 N.W. 2d 732, 745, with respect to the statute there under consideration. It is fundamental that statutes of limitations are procedural in nature (see *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342; *Hilberg v. Industrial Com.* (1942), 380 Ill. 102; see also *Kalmich v. Bruno* (7th Cir. 1977), 553 F.2d 549, *cert. denied* (1977), 434 U.S. 940, 54 L. Ed. 2d 300, 98 S. Ct. 432) and are not designed to alter substantive rights or convey property interests. The time limitations of the statute in question here, however, operate to transfer vested, freehold interests. Whether denominated a statute of limitations or otherwise, its operation is simply incompatible with the due process requirements earlier expressed.

The judgment of the circuit court of White County holding the Act unconstitutional is accordingly affirmed.

*Judgment affirmed.*