# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

**Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago,**
**2012 IL 112566**

---

| | |
|---|---|
| Caption in Supreme Court: | CHICAGO TEACHERS UNION, LOCAL No. 1, AMERICAN FEDERATION OF TEACHERS, Appellee, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Appellants. |
| Docket No. | 112566 |
| Filed | February 17, 2012 |
| Held *(Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.)* | The statutes governing the public schools of the City of Chicago do not give tenured teachers a substantive right to be rehired after an economic layoff or the right to certain procedures during the rehiring process. |
| Decision Under Review | Certified question from the United States Court of Appeals for the Seventh Circuit, the Hon. David H. Coar, Judge, presiding. |
| Judgment | Certified questions answered. |

| Counsel on Appeal | James C. Franczek, Jr., Sally J. Scott and Abizer Zanzi, of Franczek Radelet P.C., and Patrick J. Rocks and Susan M. O'Keefe, all of Chicago, for appellants. |
| --- | --- |
| | Thomas H. Geoghegan and Michael P. Persoon, of Despres, Schwartz & Geoghegan, Ltd., Robert E. Bloch and Omar Josef Shehabi, of Dowd, Bloch & Bennett, and Robin Potter and Jennifer N. Purcell, all of Chicago, for appellee. |
| | Elaine K.B. Siegel, of Chicago, for *amici curiae* Parents United for Responsible Education and Designs for Change. |
| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. |
| | Justices Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion. |
| | Justice Theis dissented, with opinion, joined by Chief Justice Kilbride. |

## OPINION

¶ 1      This court accepted certified questions of law from the United States Court of Appeals for the Seventh Circuit. Ill. S. Ct. R. 20 (eff. Aug. 1, 1992). The court of appeals asks whether sections 34-18 (31) and 34-84 of the School Code (105 ILCS 5/34-18(31), 34-84 (West 2010)) "give laid-off tenured teachers either (1) the right to be rehired after an economic layoff, or (2) the right to certain procedures during the rehiring process? If so, what is the scope of that right?" We conclude that sections 34-18(31) and 34-84 do not confer these rights.

¶ 2                               I. BACKGROUND

¶ 3      The Board of Education of the City of Chicago (Board) exercises "general supervision and jurisdiction over the *** [Chicago] public school system." 105 ILCS 5/34-18 (West 2010). The right to employ, discharge, and layoff teachers is vested solely with the Board. 105 ILCS 5/34-8.1 (West 2010). The Chicago Teachers Union (Union) is the teachers' exclusive bargaining representative.

¶ 4      In the summer of 2010, the Board faced significant budget deficits for the 2010-2011 school year. Consequently, in several phases that summer, the Board was forced to lay off 1,289 teachers. All laid-off teachers received notice of their termination. With their notices, the Board gave the teachers information on how to search and apply for vacant teaching positions within the Chicago public school system. The notices also pointed the teachers to

a Web site listing vacancies and included invitations to attend a resume and interviewing workshop and two job fairs that were open solely to displaced teachers. However, not all vacancies were listed on the Web site, and laid-off teachers were not given preference for other teaching jobs.

¶ 5   In August 2010, due to an increase in federal funding, the Board recalled approximately 715 tenured teachers. These teachers were not recalled pursuant to an official recall policy. According to Rachel Resnick, the Board's labor relations officer: "A teacher who is laid off may be rehired, but we have no recall policy." Subsequent to the layoff, teacher vacancies have become available within the Chicago public school system. Laid-off teachers who were not rehired complain that many of those positions have been filled with new hires instead of with laid-off tenured teachers.

¶ 6   In August 2010, the Union filed a complaint in the United States District Court for the Northern District of Illinois against the Board alleging, *inter alia*, violations of federal due process. The Union also filed a motion for preliminary and permanent injunctive relief on its due process claim. Following a hearing, the district court granted the Union's motion for injunctive relief. The court concluded that section 34-18(31) of the School Code (105 ILCS 5/34-18(31) (West 2010)) "provides tenured teachers some residual property rights in the event of an economic layoff" (*Chicago Teachers Union v. Board of Education of the City of Chicago*, No. 10 C 4852, slip op. at 14 (N.D. Ill. Oct. 4, 2010)), and "contemplates not only rights concerning layoffs, but rights concerning recall procedures as well." *Id*. at 13. The court found that this property interest is protected by the fourteenth amendment to the United States Constitution. The court entered a permanent injunction: (1) ordering the Board to rescind the discharges of tenured teachers; (2) directing the Board, within 30 days, to promulgate, in consultation with the Union and after good-faith negotiations, recall rules compliant with section 34-18(31); and (3) enjoining the Board from conducting future layoffs in a similar manner until it promulgates recall rules. The district court granted the Board's motion to stay the permanent injunction pending the outcome of the Board's appeal.

¶ 7   A divided panel of the United States Court of Appeals for the Seventh Circuit affirmed "the district court's finding that tenured, laid-off teachers have a residual property right in the event of an economic layoff," but narrowed the scope of the district court's injunction. The appeals court majority concluded: "Although consultation with the Union may expedite the process of promulgating the rules, there is nothing in Section 34-18(31) that requires cooperation with the Union, and we decline to impose such a requirement." *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 640 F.3d 221, 232 (7th Cir. 2011), *vacated*, 662 F.3d 761 (7th Cir. 2011) (*per curiam*). A dissenting judge asserted that Illinois law did not give tenured teachers a substantive entitlement to be rehired after an economic layoff. *Id.* at 233 (Manion, J., dissenting).

¶ 8   The Board requested rehearing, contending that the federal court misinterpreted Illinois law. The court concluded that it should afford this court an opportunity to interpret Illinois law. Accordingly, the court granted the petition for rehearing, vacated its prior opinion (*Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 662 F.3d 761 (7th Cir. 2011) (*per curiam*), *vacating* 640 F.3d 221, and, pursuant to its Rule 52 (7th Cir. R. 52), certified the following questions to this court:

"1. Section 34-84 of the Illinois School Code provides that appointments of teachers become 'permanent' after 3 years. This is commonly referred to as tenure. Does section 34-84 give laid-off tenured teachers either (1) the right to be rehired after an economic layoff, or (2) the right to certain procedures during the rehiring process? If so, what is the scope of that right?

2. Section 34-18(31) of the Illinois School Code empowers the Board of Education to promulgate rules governing layoff and recalls. It also provides certain criteria that the Board should consider when formulating those rules. In this case, no rules were formulated. Does section 34-18(31) or the limits it places on the Board's discretion give laid-off tenured teachers either (1) the right to be rehired after an economic layoff, or (2) the right to certain procedures during the rehiring process? If so, what is the scope of that right?

3. If neither section 34-84 nor section 34-18(31) standing alone gives laid-off tenured teachers substantive or procedural rights related to rehiring, when read in combination do they give those teachers either (1) the right to be rehired after an economic layoff, or (2) the right to certain procedures during the rehiring process? If so, what is the scope of that right?" *Chicago Teachers Union, Local No. 1,* 662 F.3d at 764-65.

Further, the court of appeals expressly invited "reformulation of any of the questions presented if necessary," and stated that "nothing in this certification should be read to limit the scope of the inquiry to be undertaken by the Supreme Court of Illinois." *Id.* at 765. The court of appeals stayed proceedings in that court during our consideration of this matter.

¶ 9        This court accepted certification pursuant to Supreme Court Rule 20 (Ill. S. Ct. R. 20 (eff. Aug. 1, 1992)). We subsequently granted Parents United for Responsible Education, and Designs for Change, leave to submit an *amici curiae* brief in support of the Union. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 10                                II. ANALYSIS
¶ 11                    A. State Law Must Create Property Interest
¶ 12       The court of appeals promulgated the certified questions based on a familiar analytical framework. The due process clause of the fourteenth amendment protects against the deprivation of life, liberty, or property without due process of law. U.S. Const., amend. XIV. The fourteenth amendment's procedural protection of property is a safeguard of property interests that a person has already acquired in specific benefits. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). Of course, the federal Constitution does not create property interests. " 'Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Wilson v. Bishop*, 82 Ill. 2d 364, 368-69 (1980) (quoting *Roth*, 408 U.S. at 577). " 'Therefore, the starting point in any procedural due process analysis is a determination of whether one of those protectable interests is present, for if there is not, no process is due.' " *Wilson*, 82 Ill. 2d at 368 (quoting *Polyvend, Inc. v. Puckorius*, 77 Ill. 2d

287, 293-94 (1979)); see *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993) (same).

¶ 13    Whether a property interest is protectable under the fourteenth amendment is ultimately a question of federal constitutional law. However, resolution of the federal issue begins with a determination of what state law provides. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756-57 (2005); *id*. at 771 (Souter, J., concurring, joined by Breyer, J.) ("the federal process protects the property created by state law"). "State law can create a property interest in employment." *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 106 (1990); see *Buttitta*, 9 F.3d at 1202 (same). Therefore, the court of appeals asks this court whether the School Code grants laid-off tenured teachers any statutory rights.

¶ 14                              B. Article 34 of School Code

¶ 15    The certified questions involve several sections of the School Code. The primary objective in construing a statute is to ascertain and give effect to the intention of the legislature. All other rules of statutory construction are subordinate to this cardinal principle. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990); *Electrical Contractors Ass'n of City of Chicago, Inc. v. Illinois Building Authority*, 33 Ill. 2d 587, 591-92 (1966). The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. A statute is viewed as a whole. Therefore, words and phrases are construed in light of other relevant statutory provisions and not in isolation. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 268 (2010); *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004). Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Williams*, 208 Ill. 2d at 487; *A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 532 (1999). The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Hubble*, 238 Ill. 2d at 268; *Williams*, 208 Ill. 2d at 487. Statutory construction presents a pure question of law that we review *de novo*. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001).

¶ 16    Article 34 of the School Code "applies only to cities having a population exceeding 500,000." 105 ILCS 5/34-1 (West 2010). Section 34-18 provides in pertinent part:

>     "Powers of the board. The board shall exercise general supervision and jurisdiction over the public education and the public school system of the city, and, except as otherwise provided by this Article, shall have power:
>
>                                        * * *
>
>     31. To promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including, but not limited to, criteria for such layoffs, reductions in force or recall rights of such employees and the weight to be given to any particular criterion. Such criteria shall take into account factors including, but not be limited to, qualifications, certifications, experience, performance ratings or evaluations, and any other factors relating to an employee's job performance[.]" 105 ILCS 5/34-18(31) (West 2010).

-5-

Further, section 34-84 of the School Code provides in pertinent part: "Appointments and promotions of teachers shall be made for merit only, and after satisfactory service for a probationary period *** appointments of teachers shall become permanent, subject to removal for cause in the manner provided by Section 34-85." 105 ILCS 5/34-84 (West 2010). In turn, section 34-85 sets forth the process for removing a tenured teacher for cause, including written notice of charges and a hearing. 105 ILCS 5/34-85 (West 2010).

¶ 17                    *1. Substantive Right to Be Rehired After Economic Layoff*

¶ 18          In a series of questions, the court of appeals first asks whether section 34-18(31) or 34-84 of the School Code, individually or in combination, give laid-off tenured teachers the substantive right to be rehired after an economic layoff. We conclude they do not.

¶ 19          As set forth above, section 34-84 establishes a system of "permanent" appointment of teachers, also known as tenure, subject to removal for cause as prescribed in section 34-85. The Board contends that section 34-84 does not provide any substantive rights to tenure after a layoff. The Union contends that, solely "by virtue of the teacher's 'permanent' appointment" under section 34-84, a laid-off tenured teacher has the substantive right to continued employment in preference to an equally or less qualified new teacher without experience, and "should have a preferential right to a vacant position over an equally or less qualified new teacher without experience." We reject the Union's argument.

¶ 20          In *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414 (2002), this court concluded that section 34-84's provision of tenure and removal only for cause does not exempt tenured teachers from layoff. The *Land* court recognized that the Board has the long-established power to lay off tenured teachers. *Id*. at 424 (collecting cases). The court observed that prior to 1995, section 34-84 limited the Board's power to lay off tenured teachers. At that time, tenured teachers whose positions were eliminated for reasons other than "cause" were designated "reserve teachers." 105 ILCS 5/34-84 (West 1994). Reserve teachers remained on the Board's payroll for 25 months and were entitled to interim teaching positions and appointments to vacancies for which they had proper certification. *Id*.; see *Land*, 202 Ill. 2d at 424-25. However, in 1995, the legislature amended article 34 of the School Code by: removing all statutory references to "reserve teachers," deleting the language regarding layoffs and recall from section 34-84, and adding section 34-18(31). 105 ILCS 5/34-18(31), 34-84 (West 2010). The *Land* court concluded that the 1995 amendment "did not eliminate or reduce" the Board's long-established power to lay off tenured teachers. *Land*, 202 Ill. 2d at 425.

¶ 21          While not eliminating or reducing the Board's power, the 1995 amendment reflects a clear legislative intent to change the statutory rights of tenured teachers in a layoff. When the legislature amends an unambiguous statute by deleting certain language, it is presumed that the legislature intended to change the law in that respect. *In re K.C.*, 186 Ill. 2d 542, 548 (1999); *Lingwall v. Hoener*, 108 Ill. 2d 206, 212 (1985). In the case at bar, the General Assembly's removal of layoff and recall procedures from section 34-84 eliminated any substantive right arising from section 34-84 for tenured teachers to be rehired after an

-6-

economic layoff.[1]

¶ 22     The court of appeals also asks whether section 34-18(31) of the School Code provides laid-off tenured teachers with the substantive right to be rehired after an economic layoff. According to the Board, section 34-18(31) involves *procedures* rather than substantive rights. However, the Union contends that "the right to recall under Section 34-18(31) by itself is an independent substantive right." The Union argues that while section 34-18(31) "may authorize a recall 'procedure,' *** its mandatory criteria imply a limited 'substantive' right of preference over new hires."

¶ 23     We reject the Union's argument. The plain language of section 34-18(31) provides that the Board "shall have the power" to promulgate layoff procedures and to promulgate recall procedures. Section 34-18(31) is plainly an authorizing or enabling provision and does not contain any mandatory terms. The legislature intended merely to confer a power which the Board could exercise or not, as it saw fit. Accordingly, section 34-18(31) cannot be the basis of a substantive right to be rehired after an economic layoff.

¶ 24     In contrast, for all other school districts in Illinois, the legislature has mandated that laid-off tenured teachers, with satisfactory or better evaluations, have a right to recall. Subject to their certification and seniority, such teachers have the right to be rehired into new vacancies in their districts for a period of one or two years, depending on the size of the layoff. 105 ILCS 5/24-12 (West 2010). When the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally and purposely in the inclusion or exclusion (*In re J.L.*, 236 Ill. 2d 329, 341 (2010); *Adames v. Sheahan*, 233 Ill. 2d 276, 311 (2009)), and that the legislature intended different meanings and results (*In re K.C.*, 186 Ill. 2d at 549-50; *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees*, 146 Ill. 2d 347, 353 (1992)). In the present case, the existence of a recall provision in one section of the School Code and the absence of such a provision in another is further indication that section 34-18(31) does not give laid-off tenured Chicago public school teachers a substantive right to be rehired after an economic layoff. Had the legislature intended to provide substantive rehire rights to laid-off tenured Chicago public school teachers, it would have done so, as it did for all other school districts in Illinois.[2]

¶ 25     The Union further argues that the Board's authority to promulgate layoff procedures and recall procedures pursuant to section 34-18(31) "must be balanced with the teacher's right to a 'permanent' appointment under section 34-84." Citing this court's decision in *Powell v. Jones*, 56 Ill. 2d 70 (1973), the Union reasons that the Board is required to promulgate recall procedures because the power to lay off under section 34-18(31) cannot be equal to the power to remove a teacher permanently under sections 34-84 and 34-85

---

[1]The dissent appears to assign pretextual motives to the Board's economic layoff of tenured teachers. *Infra* ¶ 41 (Theis, J., dissenting, joined by Kilbride, C.J.). However, it is undisputed that the layoffs in this case were based on nonpretextual economic reasons.

[2]The dissent acknowledges this statutory distinction (*infra* ¶ 45 (Theis, J., dissenting, joined by Kilbride, C.J.)), yet fails to recognize its legal significance in construing these statutes.

¶ 26    We cannot accept this argument. In *Powell*, this court observed that the Civil Service Act provided for the adoption of layoff rules and recall rules for civil service employees, which were actually adopted. This court held that the recall rules afforded adequate procedural due process based on the qualitative differences between layoff and discharge. *Powell*, 56 Ill. 2d at 79-82. That case has no bearing on what rights the laid-off teachers have pursuant to *this* statute. *Powell* does not stand for the proposition that an enabling statute that authorizes the adoption of layoff procedures *requires* the adoption of recall procedures.

¶ 27                  *2. Procedural Rights During Rehiring Process*

¶ 28    In a series of questions, the court of appeals next asks whether section 34-18(31) or 34-84, individually or in combination, give laid-off tenured teachers any procedural rights during the rehiring process. Initially, we agree with the Union that this set of certified questions does not require this court to give an opinion as to the procedures that the due process clause of the fourteenth amendment may require. So viewed, the issue is one of federal constitutional law. See *Gonzales*, 545 U.S. at 756-57. Rather, this set of questions seeks answers about "procedures" only if teachers have no substantive rights to recall and continued employment.

¶ 29    According to the Board, just as section 34-84 does not give laid-off tenured teachers a substantive right to be rehired after an economic layoff, so too section 34-84 does not give such teachers a right to certain procedures during the rehiring process. We agree. The 1995 amendment to the School Code removed from section 34-84 legislatively mandated procedures for rehiring tenured teachers after a layoff.

¶ 30    Further, section 34-18(31) does not create a right to recall procedures. If the Board chooses to promulgate criteria for recall procedures, it is directed to "take into account factors including, but not *** limited to, qualifications, certifications, experience, performance ratings or evaluations, *and any other factors relating to an employee's job performance.*" (Emphasis added.) 105 ILCS 5/34-18(31) (West 2010). These mandatory legislative factors do not give tenured teachers a right to recall procedures. This section does not guarantee that after any layoff the most qualified or most experienced tenured teacher will be recalled. Rather, all it provides is that *if* the Board promulgates recall procedures, it will take into account factors that include qualifications, experience, and "any other factors relating to an employee's job performance." *Id*. The Union cannot reasonably read section 34-18(31) and infer from the fact that the Board will consider qualifications, certifications, and job performance when promulgating recall procedures that they have a statutory right to recall procedures.

¶ 31                                III. CONCLUSION

¶ 32    For the foregoing reasons, we conclude that neither section 34-18(31) nor section 34-84 of the School Code, considered separately or together, gives laid-off tenured teachers either a substantive right to be rehired after an economic layoff or a right to certain procedures during the rehiring process.

¶ 33    Certified questions answered.

¶ 34    JUSTICE THEIS, dissenting:

¶ 35    After today's decision, the Chicago Board of Education may *de facto* discharge tenured teachers without cause during an economic layoff. Because I believe this result gives insufficient weight to the term "permanent" in section 34-84 of the School Code, I dissent.

¶ 36    Section 34-84 provides that appointments and promotions of teachers "shall be made for merit only," and that appointments "shall become permanent, subject to removal for cause" for teachers who satisfactorily complete a probationary period. 105 ILCS 5/34-84 (West 2010). As the Seventh Circuit noted, permanent or tenured teachers have a property interest in their continued employment (*Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 640 F.3d 227, 227 (7th Cir. 2011), *vacated,* 662 F.3d 761 (7th Cir. 2011) (*per curiam*)), and may not be discharged unless the Board of Education complies with the notice and hearing requirements in section 34-85. The teachers here were not discharged, but rather were laid off. This distinction is crucial. See *Mims v. Board of Education of the City of Chicago*, 523 F.2d 711, 715 (7th Cir. 1975) ("a layoff is less drastic than a discharge" (citing *Powell v. Jones*, 56 Ill. 2d 70 (1973))). The issue here, as I see it, is what does "permanent" mean in the context of a layoff?

¶ 37    The legal framework is familiar, and presented well in the majority opinion. Under the fourteenth amendment, the state may not deprive a person of life, liberty, or property without due process of law. U.S. Const., amend. XIV. An initial requisite for a due process claim, then, is the existence of a protected interest. Here, the Union claimed a deprivation of property. What constitutes property, or a property interest, is defined by state law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 561 (1985) (Rehnquist, J., dissenting). Thus, our analysis must focus on the statutes here.

¶ 38    Before 1995, tenured teachers in Chicago whose services were "no longer required because of a decrease in student membership, a change in subject requirements within the attendance center organization, or the closing of an attendance center" (105 ILCS 5/34-1.1 (West 1992 & Supp. 1993)) enjoyed recall rights under section 34-84. See 105 ILCS 5/34-84 (West 1992) ("supernumerary teachers"); 105 ILCS 5/34-84 (West Supp. 1993) ("reserve teachers"). These rights were similar to those of tenured teachers elsewhere in Illinois. See 105 ILCS 5/24-12 (West 1992). Then the School Code was amended. The legislature retained recall rights for downstate teachers, but altered such rights for Chicago teachers. The legislature deleted the reserve teacher provisions of section 34-84, and added section 34-18(31), which provides:

> "The board *** shall have power:
>
>                            * * *
>
>     *** [t]o promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including, but not limited to, criteria for such layoffs, reductions in force or recall rights of such employees and the weight to be given to any particular criterion. Such criteria shall take into account factors including, but not limited to, qualifications, certifications,

-9-

experience, performance ratings or evaluations, and any other factors relating to an employee's job performance[.]" 105 ILCS 5/34-18(31) (West 2010).

Notably, section 34-18(31) does not give the Board the authority to discharge. It gives the Board only the authority to create layoff and recall rules, and criteria for when such rules apply, as well as guidance about factors relevant to the exercise of this authority.

¶ 39    We discussed these statutes in *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414 (2002). In *Land*, five teachers employed by the Board were laid off, and subsequently filed a complaint seeking a writ of *mandamus* to order their reinstatement and a declaration that the Board's layoff policy was invalid under sections 34-84 and 34-85 of the School Code. The trial court granted summary judgment to the Board, and the appellate court reversed.

¶ 40    This court affirmed in part. We noted that the Board had long possessed the authority to conduct layoffs. *Id.* Before 1995, limits on that power appeared in section 34-84. *Id.* "The 1995 amendments did not eliminate or reduce this power. Instead, by deleting the layoff provision from section 34-84 and adding section 34-18(31), the legislature gave the Board the authority to formulate and implement its own rules and procedures regarding layoffs rather than binding the Board to a legislatively mandated procedure." *Id.* at 425. In short, sections 34-84 and 34-85 do not exempt tenured teachers from layoff. *Id.*

¶ 41    *Land*, however, offers only a partial resolution to the issue before us. In that case, we held that "permanent" under section 34-84 does not mean exempt from an economic layoff, but we made no comment on what "permanent" does mean in that context—or what recall rights Chicago teachers might still have under the 1995 amendments to the School Code. As the Seventh Circuit stated, neither those amendments nor *Land* "suggest that tenured teachers are not entitled to an opportunity to show that they are qualified for vacancies after an economic layoff." *Chicago Teachers Union*, 640 F.3d at 230. That court continued: "If a 'permanent' appointment means anything, it at least means that if vacancies arise during or shortly after a layoff, the teachers who originally held 'permanent' appointments should be given a meaningful opportunity to show that they remain qualified to fill those positions." *Id.* I agree. The power to lay off cannot be equal to, or substitute for, the power to discharge. The legislature did not intend to allow the Board simply to ignore its authority to adopt recall rules under section 34-18(31) and do through inaction what it cannot do under section 34-85—namely, terminate a tenured teacher without cause.

¶ 42    In response to the Seventh Circuit's questions, I believe that laid-off tenured teachers have a property interest in or, using the majority's terminology, a statutory right to continued employment, which is rooted in section 34-84 and its guarantee of permanent appointments subject to removal for cause. See *Lalvani v. Cook County*, 269 F.3d 785, 791 (7th Cir. 2001) (holding that a "legitimate claim of entitlement" to government employment "is typically rooted in statutory or contractual language indicating that the employee cannot be terminated but for cause"); see also *Mims*, 523 F.2d at 715 (holding that laid-off civil service employees of the Chicago Board of Education had "a property interest in their continued active employment, not just in their status as civil servants"). The inquiry then becomes how best to vindicate that interest, or what is the scope of that right.

¶ 43 The hallmark of procedural due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Under *Mathews*, a court considering what process is due must balance "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. Here, the tenured teachers' property interest in continued employment and the Board's interest in maintaining both its instructional quality and its fiscal health are important. But the risk of erroneous deprivation is high because there are no recall procedures in place, and accordingly the probable value of such procedures is similarly high.

¶ 44 Tenured teachers, thus, are entitled to some process in which they have a meaningful opportunity to demonstrate their qualifications for vacant positions with the Board. However, judicial imposition of that process is problematic, in light of the Board's statutory authority to adopt procedures for layoffs and recalls. I believe that the federal courts were correct in recognizing that only the Board has the "institutional competence to define the exact contours of those procedures." *Chicago Teachers Union*, 640 F.3d at 232. The legislature placed power with the Board, and the Board must exercise that power—not just with respect to layoffs, but more importantly with recalls—in order to protect the rights of tenured teachers.

¶ 45 Though the majority indicates that the Board remains free to ignore its power, I urge the Board to complete its work. If it refuses, I urge the legislature to clarify the recall rights of tenured teachers in Chicago, as it has done before, and as it does currently for tenured teachers elsewhere in our state.

¶ 46 CHIEF JUSTICE KILBRIDE joins in this dissent.