# Illinois Official Reports

## Appellate Court

*Frakes v. Peoria School District No. 150*, 2014 IL App (3d) 130306

| | |
|---|---|
| Appellate Court Caption | MICHELLE FRAKES and EYMARDE LAWLER, Plaintiffs-Appellants, v. PEORIA SCHOOL DISTRICT NO. 150, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-13-0306 |
| Filed | June 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant school district in an action alleging that plaintiffs were improperly terminated from their positions as tenured teachers, since the record showed that plaintiffs had unsatisfactory performance evaluations during the 2011-12 school year, they both were placed on medical leave for health issues they had during the last part of the year, they never returned to work, they were notified that they would be honorably dismissed at the end of the 2011-12 school term due to a reduction in force, and pursuant to section 24-12 of the School Code, they were placed in "Group 2," teachers who had unsatisfactory performance evaluations, and as such, plaintiffs had no recall rights when the district hired new teachers to replace plaintiffs for the 2012-13 school year. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-CH-577; the Hon. Michael E. Brandt, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Gilbert Feldman (argued), of Cornfield & Feldman, of Chicago, for appellants.

Stanley B. Eisenhammer (argued) and Jeffrey C. Goelitz, both of Hodges, Loizzi, Eisenhammer, Rodick & Kohn, LLP, of Arlington Heights, for appellee.

Panel

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Schmidt concurred in the judgment and opinion.
Justice Wright dissented, with opinion.

## OPINION

¶ 1    The plaintiffs, Michelle Frakes and Eymarde Lawler, filed a civil complaint for declaratory and injunctive relief, alleging that the defendant, Peoria School District No. 150, wrongfully terminated their employment as teachers. The parties filed cross-motions for summary judgment and, after a hearing, the circuit court granted the defendant school district's motion. On appeal, the plaintiffs argue that the circuit court erred when it granted summary judgment in favor of the defendant school district. We affirm.

¶ 2                      FACTS

¶ 3    On September 4, 2012, the plaintiffs, who were tenured teachers, filed a civil complaint for declaratory and injunctive relief, alleging that the defendant school district wrongfully terminated them. The complaint alleged that the defendant school district advised the plaintiffs in April 2012 that it would be honorably dismissing the plaintiffs at the end of the 2011-12 school term because the school board decided to undergo a reduction in force (RIF). The complaint also alleged that in July 2012 the defendant school district actually hired new teachers to replace the plaintiffs.

¶ 4    In its answer to the complaint, the defendant school district alleged an affirmative defense in that pursuant to section 24-12 of the Illinois School Code (Code) (105 ILCS 5/24-12 (West 2012)), the plaintiffs had been placed into a group of teachers who had unsatisfactory performance evaluations (Group 2 under section 24-12(b) of the Code (105 ILCS 5/24-12(b) (West 2012))) and therefore were not entitled to recall rights for any positions that came available after the date of their dismissal.

¶ 5    The parties filed cross-motions for summary judgment. The pleadings stated that the plaintiffs had received performance evaluations during the 2011-12 school term that resulted in unsatisfactory ratings. The plaintiffs were to be placed into remediation procedures to address their performances, but before the remediation period could be commenced, both

plaintiffs informed the school district that they had serious health issues that prevented their return to work. Accordingly, the plaintiffs were placed on medical leave for the rest of the 2011-12 school term.

¶ 6    Attached to the defendant school district's motion for summary judgment was an affidavit from Teri Dunn, who was the interim comptroller/treasurer for the school district. Dunn stated in her affidavit that the school district had "a very high student mobility rate," which resulted in difficulty for the school district to predict accurate enrollment data for the upcoming school year until late June or July of each year. Further, Dunn stated that "[i]n the spring of the 2011-2012 School Year, the Board of Education was facing a RIF of full-time teachers due to uncertainty regarding funding and student enrollment." Accordingly, 70 of the district's 1,000 teachers were given dismissal notices, 16 of which were dismissed for cause and the other 54 were teachers who had been placed into Groups 1, 2, and 3 as described by section 24-12(b) of the Code (105 ILCS 5/24-12(b) (West 2012)). Later, during the summer of 2012, the school district received notice of its funding for the 2012-13 school year and it was able to determine accurate student enrollment numbers. Based on this information, the school district began to offer vacant teaching positions to those teachers dismissed at the end of the 2011-12 school term who had recall rights under the Code. Because the plaintiffs were in Group 2, they had no recall rights and were not offered any positions. The defendant school district filled some of the vacancies with new hires and some of its dismissed teachers from Group 1.

¶ 7    The circuit court held a hearing on the motions in April 2013. Subsequently, the court issued a written order in which it granted summary judgment in favor of the defendant school district. The court ruled that: (1) the plaintiffs were given proper notice of their impending dismissal pursuant to the RIF decision; (2) the plaintiffs were placed into Group 2 under section 24-12 of the Code, which included teachers who had received unsatisfactory performance evaluations; and (3) when the defendant school district learned that the funding it would receive for the 2012-13 school term would allow it to actually increase its workforce, the defendant school district followed the statutory process for rehiring, which included not rehiring teachers like the plaintiffs who had been placed into Group 2. The court also ruled that "[t]here is no support for the plaintiffs' proposition that the 45-day notice for the reason of a RIF does not effectively dismiss the plaintiffs unless there is an actual reduction in work force the following year." The plaintiffs appealed.

¶ 8                                    ANALYSIS

¶ 9    On appeal, the plaintiffs assert that the circuit court erred when it granted summary judgment in favor of the defendant school district. Specifically, the plaintiffs contend that because the defendant school district did not actually undergo a RIF for the 2012-13 school term, the defendant school district improperly dismissed them "on a whim."

¶ 10    Initially, we note that the plaintiffs have not provided a report of proceedings with the record on appeal. It is the appellant's burden to provide a reviewing court with a record sufficient to support claims of error, and any doubts that arise from the incompleteness of the record must be resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 11 Summary judgment is appropriate if the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, reveal that no genuine issue of material fact exists and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). Questions of law, such as the interpretation of a statute, are appropriate for resolution by summary judgment. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330 (2006). "When, as in this case, parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). However, we still recognize that even when cross-motions for summary judgment have been filed, a genuine issue of material fact may exist and a court is not obligated to grant summary judgment. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review a circuit court's summary judgment decision under the *de novo* standard. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

¶ 12 When construing a statute, our goal is to ascertain and give effect to the legislature's intent. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15. We view the statute as a whole and give the language its plain and ordinary meaning, which is the most reliable indicator of the legislature's intent. *Id.*

¶ 13 In relevant part, section 24-12(b) of the Code provides procedures for the dismissal of teachers pursuant to RIF decisions. 105 ILCS 5/24-12(b) (West 2012). In particular, when a school board decides to dismiss teachers pursuant to a RIF decision, those teachers must be categorized into four groups: (1) Group 1, which consists of "each teacher not in contractual continued service who has not received a performance evaluation rating"; (2) Group 2, which consists of "each teacher with a Needs Improvement or Unsatisfactory performance evaluation rating on either of the teacher's last 2 performance evaluation ratings"; (3) Group 3, which consists of "each teacher with a performance evaluation rating of at least Satisfactory or Proficient on both of the teacher's last 2 performance evaluation ratings, if 2 ratings are available, or on the teacher's last performance evaluation rating, if only one rating is available, unless the teacher qualifies for placement into grouping 4"; and (4) Group 4, which consists of "each teacher whose last 2 performance evaluation ratings are Excellent and each teacher with 2 Excellent performance evaluation ratings out of the teacher's last 3 performance evaluation ratings with a third rating of Satisfactory or Proficient." 105 ILCS 5/24-12(b) (West 2012). Further, dismissals must occur in order of these groupings, with Group 1 teachers dismissed first, and Group 4 teachers dismissed last.[1] 105 ILCS 5/24-12(b) (West 2012).

¶ 14 Section 24-12(b) also addresses what must be done if any vacancies arise for the school term following a RIF decision, including, *inter alia*, that "the positions thereby becoming available must be tendered to the teachers so removed or dismissed [pursuant to the RIF] who were in groupings 3 or 4 of the sequence of dismissal and are qualified to hold the positions." 105 ILCS 5/24-12(b) (West 2012).

---

[1]The statute also provides hierarchies for dismissals within each group, but those hierarchies are not relevant to the disposition of this appeal.

¶ 15        Contrary to the plaintiffs' argument, there is nothing in this statutory scheme to suggest that whether RIF dismissals are valid is contingent on the number of vacancies for the following school term. As the Dunn affidavit states, the school district in this case was faced with budgetary concerns in the spring of 2012 that they addressed by deciding to undergo a RIF. They did not know what funding or how many positions they would have until later that summer. Such a process is not condemned or prohibited by the statutory scheme, and it in fact appears to be contemplated by it. The statutory scheme specifically provides for what must occur if vacancies arise and does so without any suggestion that a RIF has not occurred if the net number of vacancies for the upcoming term meets or exceeds the number of dismissals from the previous term. 105 ILCS 5/24-12(b) (West 2012).

¶ 16        We also note that section 24-12(b) provides, as the plaintiffs properly point out, that Group 2 teachers do in fact have priority retention rights over Group 1 teachers. However, there is nothing in the Code to suggest that Group 2 teachers have any *recall* rights over Group 1 teachers. Section 24-12(b) clearly provides that if a school board has vacancies for the next school term, only teachers in Groups 3 and 4 have recall rights. 105 ILCS 5/24-12(b) (West 2012). The fact that the defendant school board may have hired some Group 1 teachers, rather than Group 2 teachers, to fill vacancies for the 2012-13 school term is of no consequence in this case.

¶ 17        The plaintiffs further allege that the circuit court's interpretation of section 24-12 of the Code essentially eliminates teacher tenure rights and allows a school board to dismiss tenured teachers "on a whim." The plaintiffs state that "[e]limination of the requirement of an actual RIF enables a school board to give any and all tenured employees an unchallengeable unsatisfactory evaluation grade, which automatically places them in the unprotected Group 2." However, the plaintiffs ignore multiple aspects of the statute that militate against a school board's potential to dismiss "on a whim," including the fact that school boards do not conduct the performance evaluations (105 ILCS 5/24A-3 (West 2012)); the fact that the Code also provides remediation procedures for teachers who receive unsatisfactory evaluations (105 ILCS 5/24A-5 (West 2012)); and the fact that section 24-12 of the Code also provides procedures to review arguably questionable performance evaluations of senior teachers and public hearings can be required if dismissals based on economic reasons reach certain thresholds (105 ILCS 5/24-12(b), (c) (West 2012)). Thus, contrary to the plaintiffs' protestations, a school board cannot just "freely dismiss" tenured teachers.

¶ 18        Moreover, the amendment of section 24-12 in 2011 clearly made performance evaluations the focus of RIF procedures. See Pub. Act 97-8 (eff. June 13, 2011) (additions and deletions made to the Code). While tenure still affords some protection to teachers facing dismissal pursuant to a RIF decision, such as the order in which teachers within Groups 2-4 are dismissed (105 ILCS 5/24-12(b) (West 2012)), tenure is no longer protective to the extent the plaintiffs allege.

¶ 19        We likewise reject the plaintiffs' suggestion that their dismissal after receiving unsatisfactory evaluations effectively repeals the due process protections that sections 24-12 and 24A afford to tenured teachers. First, as to the protections in section 24-12 referenced by the plaintiffs that apply to tenured teachers dismissed for cause (see 105 ILCS 5/24-12(d) (West 2012)), we note that the plaintiffs in this case were not dismissed for cause. They were dismissed as a result of a RIF decision, which was controlled by section 24-12(b), and there

is no suggestion that treating tenured teachers differently based on the manner of their dismissal is erroneous (see, *e.g.*, *Chicago Teachers Union*, 2012 IL 112566, ¶ 24 (noting that under section 24-12, tenured teachers who had evaluations of satisfactory or better, and who are then laid off, possess recall rights); *Powell v. Jones*, 56 Ill. 2d 70, 81 (1973) ("[i]n our judgment the qualitative differences between layoff and discharge are such that variances in procedure are constitutionally permissible")).

¶ 20    Second, as to section 24A, the plaintiffs merely state the following:

> "The statute, in Section 5/24A, retains the extensive due process rights of a tenured teacher who receives an unsatisfactory evaluation. Yet, if the school board can freely dismiss the teacher after the initial evaluation specified in the process, the effect is to repeal 5/24A."

The plaintiffs' undeveloped argument is unpersuasive. Here, the plaintiffs were going to be placed into remediation plans in accord with the requirements of section 24A of the Code. However, before those plans could be implemented, the plaintiffs both went on medical leave for the remainder of the 2011-12 school term. There is nothing in this record to suggest that the plaintiffs were "freely dismiss[ed]" after receiving unsatisfactory evaluations or that the defendant school district violated section 24A when it dismissed the plaintiffs.

¶ 21    Under the circumstances of this case, we hold that the circuit court properly interpreted section 24-12 of the Code and did not err when it granted summary judgment in favor of the defendant school district.

¶ 22                                CONCLUSION

¶ 23    The judgment of the circuit court of Peoria County is affirmed.

¶ 24    Affirmed.

¶ 25    JUSTICE WRIGHT, dissenting.

¶ 26    The defendant school district contends on appeal it was forced to reduce the number of teachers for the impending year, effective May 31, 2012. I respectfully submit the reduction in workforce was anticipatory at best and illusory at worst. Under either view, the purported reduction in workforce both began and ended during the students' summer break.

¶ 27    Since the statute does not provide a definition or time frame to measure a reduction in work force, we must construe a statute to give effect to the legislature's intent. *Community Unit School District 200 v. Illinois Insurance Guaranty Fund*, 358 Ill. App. 3d 1056, 1059 (2005). I disagree that a true reduction in workforce, as contemplated by our lawmakers, can begin and end during summer vacation when teachers are not typically instructing students. I contend a reduction, in this case, must be determined by comparing the number of teachers employed by the school district on the first day of the 2012-13 school year to teachers employed by the school district for the 2011-12 school year. Unless the number of teachers goes down from one year to the next, a reduction has not occurred.

¶ 28    In this case, the school district anticipated a drastic loss of funding for the 2012-13 school year in good faith. However, the reduction in funding did not occur and the school board began the 2012-13 school year with the same number of, if not more, teachers. Consequently,

the need for the school district to honorably discharge any teacher evaporated, prior to the inception of the 2012-13 school year and after funding became certain based on final enrollment information received before the 2012-13 school year began.

¶ 29 In my view, the pleadings did not establish the number of teachers for the 2012-13 school year was less than the number of teachers on May 31, 2012, the day of plaintiffs' honorable discharge. Therefore, based on the pleadings in the case at bar, I would reverse summary judgment in favor of defendant school district and direct the trial court to enter summary judgment in favor of plaintiffs.

¶ 30 I suggest that when a decline in funds requires a reduction in staff *from one year to the next*, our legislators intended to allow the most qualified tenured teachers to be recalled first and the less-than-satisfactory tenured teachers to risk replacement with more suitable instructors for the upcoming school year. In this case, routine, but short-term, budgetary concerns pending final enrollment proved to be unfounded. A staff reduction did not take place, but less-tenured teachers were hired after plaintiffs were honorably discharged. In my view, without an actual reduction in the number of teachers, the statute does not allow the honorable discharge of any tenured teacher, including those with unsatisfactory evaluations. I note the plaintiffs received unsatisfactory ratings; however, there are other methods available for the school district to remove tenured teachers who are less than dedicated and performing on an unsatisfactory level in the classroom.